In re Howard C. MORROW, Debtor.

Howard C. MORROW, Plaintiff,

v.

TORRANCE BANK, David Bretoi, Constantine Farmans, Dustin Brown, Neil Stoltz, Richard Pierce, Commissioner of the Department of Savings and Loan, and Does 1 Through 20, Inclusive, Defendants.

Bankruptcy No. LA 95–14358.
Adv. No. 95–04174–ES.

United States Bankruptcy Court,
C.D. California.

Nov. 22, 1995.

---

Richard H. Loomis, Keith Alan, Horn & Loomis, Los Angeles, CA, for Debtor and Plaintiff Howard C. Morrow.

Jon E. Drucker, Hill, Wynne, Troop & Meisinger, Los Angeles, CA, for Defendants Torrance Bank, David Bretoi, Constantine Farmans, Dustin Brown, Neil Stoltz and Richard Pierce.

Herbert A. Levin, Raymond B. Jue, Deputy Attorneys General of the State of California, for Defendant Interim Commissioner of the Department of Savings and Loan of the State of California.

## MEMORANDUM OF DECISION RE: TRIAL ON INJUNCTION AND DECLARATORY RELIEF

ERITHE A. SMITH, Bankruptcy Judge.

This Memorandum of Decision constitutes this Court's findings of fact and conclusions of law pursuant to Fed.R.Bankr.P. 7065, Fed.R.Civ.P. 65, Fed.R.Bankr.P. 7052, and Fed.R.Civ.P. 52(a). This Court has jurisdiction over the instant adversary proceed-

ing pursuant to 28 U.S.C. §§ 157(b)(1), 1334(b). *See* Fed.R.Bankr.P. 7001(7), (9).[1]

## I. FACT SUMMARY

### State Court Actions

Howard C. Morrow (the "Debtor" or "Morrow") served as Chairman of the Board and Chief Executive Officer of Torrance Bank (fka Torrance Savings and Loan Association) (the "Bank"), and (at least at the time of the incidents complained of) held voting rights to 19.4% of the issued stock in South Bay Holding Company, the 100% owner of the Bank. On February 17, 1995, Morrow filed a voluntary chapter 7 petition in this Court, commencing case number LA 95–14358–ES (the "Case").

On June 19, 1995, Morrow filed a "Complaint for: 1. Declaratory Relief; and 2. Injunction;" (the "Morrow State Court Complaint") in the Superior Court of the State of California for the County of Los Angeles (Case No. YC023661) (the "Morrow State Court Action"), commencing litigation against the Bank and various members of its board of directors (the "Board"). In the Morrow State Court Complaint, the Debtor accused various members of the Board of trying to remove him from the Board and of attempting to use the bankruptcy filing as a means of terminating his participation on the Board. Specifically, Morrow accused defendant and Board member David Bretoi of contacting the Department of Savings and Loans of the California State Business, Transportation, and Housing Agency, alleg-

edly in an effort to solicit the department's assistance in effecting Morrow's removal from the Board.

On May 17, 1995, Keith Paul Bishop, the Interim Commissioner of the Savings and Loan Department (the "Commissioner") issued a letter to the Board directing their attention to Cal.Fin.Code § 6152(a), which provides that:

> ... **A director shall automatically cease to be a director upon being adjudicated as bankrupt** or upon conviction of a criminal offense involving dishonesty or a breach of trust.

Cal.Fin.Code § 6152(a) (Emphasis added).

The letter focuses on the meaning of the archaic term "adjudicated as bankrupt" and the use of new terminology designating the commencement of a bankruptcy case as entry of an "order for relief". The Commissioner concluded:

> The order for relief, generally speaking, has the same effect as an "adjudication" under prior law.
>
> It is our interpretation of Financial Code Section 6152(a) that the reference to "being adjudicated a bankrupt" means the filing [of] a voluntary petition in bankruptcy, which is its current legal equivalent. Accordingly, a director ceases to be a director upon the filing of a voluntary petition, automatically and without the necessity of any action by the board of directors or any other person.

---

1. The debtor, in his "Complaint for Declaratory Relief, Injunction and Damages" curiously and simultaneously alleges (1) federal question jurisdiction (pursuant to 28 U.S.C. § 1331) "in that the principal basis for the claims asserted ... is 11 U.S.C. § 525", (2) jurisdiction as a proceeding "related to" a case under title 11 of the United States Code, (3) jurisdiction pursuant to 28 U.S.C. § 1334(b), and (4) asserts that the proceeding is not "core" as that term is defined in 28 U.S.C. § 157(b). As such, the Plaintiff indicated his lack of "consent to entry of final orders or judgment by the Bankruptcy Court in this action." First, as discussed in more detail in fn. 12, *infra*, this Court derives its jurisdiction from § 1334, so the debtor's assertion of federal question jurisdiction is misplaced. Second, the debtor's contemporaneous assertions of jurisdiction arising from 11 U.S.C. § 525 and "noncore" status are contradictory. The Ninth Circuit has held that a "core proceeding" involves a "substantive right created by the federal bankruptcy law". *In re Harris Pine Mills*, 44 F.3d 1431, 1435 (9th Cir.1995); *Eastport Assocs. v. City of Los Angeles (In re Eastport Assocs.)*, 935 F.2d 1071, 1076–77 (9th Cir.1991) (as amended); citing *In re Wood*, 825 F.2d 90, 96–97 (5th Cir. 1987) (Footnotes omitted). As such, an action predicated upon § 525—creating a right to be free from discrimination predicated upon one's status as a "bankrupt" or "debtor" or person associated with either—is "core". Notwithstanding Plaintiff's erroneous jurisdictional assertions, this Court is empowered pursuant to 28 U.S.C. § 157(b)(3) to make its own determination as to whether a proceeding is "core". Finally, Plaintiff's denial of consent to entry of final orders or judgment in this proceeding is unavailing since "core" proceedings are not subject to the restrictions of 28 U.S.C. § 157(c)(1).

Eight days later, Alan Spatz of Hill, Wynne, Troop & Meisinger, counsel for the Bank, forwarded a letter to the Board regarding Morrow's status as a director of the Bank. Acknowledging the Commissioner's letter, Spatz's communication similarly contemplated the issue of "whether the filing of a voluntary petition in bankruptcy is tantamount to be adjudicated as bankrupt." Noting the absence of any "regulation or case" addressing the issue, the Board's attorney recommended that the Board take the position that Morrow ceased to be a director of the Bank. Spatz indicated that if Morrow sought a judicial determination of his status as a director, Spatz assumed that the Bank "would remain neutral and would abide by whatever judicial determination was made." On May 31, 1995, apparently in response to the Commissioner's letter and the opinion of its counsel, the Board unanimously voted to prohibit the Debtor from participating in further meetings of the Board.

The Morrow State Court Complaint sought a judicial determination of the various parties to the action "with reference to the impact of ... section 6152(a) and the interpretation thereof by the ... Commissioner with regard to" Morrow as well as an injunction against the Bank and Board barring them "from denying [Morrow] the right to continue to participate and serve as a member of the Board ...". Concurrently with the filing of the Morrow State Court Complaint, the Debtor filed an "Ex Parte Application for Temporary Restraining Order" and "Order to Show Cause re: Preliminary Injunction and Temporary Restraining Order". The Bank filed a response, essentially echoing the statements of its counsel noted above. Morrow was granted an ex parte temporary restraining order and preliminary injunction enjoining the Board from prohibiting him from attending and participating in the meetings of the Board.

On June 28, 1995, the Commissioner, in *In the Matter of Howard C. Morrow a Savings and Loan Holding Company of Torrance Bank, S.S.B., a California Savings and Loan Association,* issued an "Order [Financial Code 8200]" (the "Cease and Desist Order") in which he found Morrow ceased to be a member of the Board by operation of law under Cal.Fin.Code § 6152(a) on the date he filed his petition. The Commissioner found that Morrow's continuing attempts to assert himself as a member of the Board and participate in its activities violated section 6152(a). The Commissioner ordered that Morrow "cease and desist, immediately and in the future, from participating in the business of Torrance [Bank] as a member of its board ...".

On behalf of the Commissioner, the Attorney General of the State of California filed an "Ex Parte Application for Order Enforcing Regulatory Order to Cease and Desist Participation as a Director of Savings and Loan Association" (the "Application") on July 12, 1995. The Application was made concomitantly with the commencement of a new Superior Court case entitled *Commissioner of the Department of Savings and Loan v. Howard C. Morrow,* Case No. BS 034650 (the "Commissioner State Court Action") and pursuant to Cal.Fin.Code § 8200(f) whereby the Commissioner is authorized to

apply for enforcement of the order to the superior court in the county in which the home office of the association or the person is located. The order shall be enforced ex parte and without notice by the court. The proceedings shall be given precedence over other cases pending in court, and shall in every way be expedited.

Cal.Fin.Code § 8200(f). In the Application, the Commissioner asked that the court issue an order mandating Morrow's compliance with the Cease and Desist Order. In relevant part, the Commissioner employed the legislative history of the Bankruptcy Code to argue the validity of his Cease and Desist Order, based upon the premise that "adjudication as bankrupt" as used in Cal.Fin.Code § 6152(a) should be construed to mean the simple act of filing a bankruptcy petition in light of changes in the Bankruptcy Code abolishing the use of the term.[2]

---

2. 11 U.S.C. § 301 provides that:
A voluntary case under a chapter of this title is commenced by the filing with the bankruptcy court of a petition under such chapter by an entity that may be a debtor under such chapter. The commencement of a voluntary case

Morrow responded to the Application with his own "Ex Parte Application for an Order Quashing the Cease and Desist Order, or in the Alternative, Granting Plaintiff a Stay in Accordance with the June 29, 1995 Preliminary Injunction Issued in this Case" and a "Supplemental Memorandum of Points and Authorities in Support of Ex Parte Application" (the "Supplement"), urging the court instead to confirm its prior injunction barring interference with Morrow's directorship at the Bank. By contrast, Morrow argued that the phrase "adjudicated as bankrupt" should be tantamount to "entry of discharge", as evinced by certain California caselaw,[3] and semantics.[4] On the last page of the July 24, 1995 Supplement, the Debtor first addressed the issue of whether the Bankruptcy Code itself precludes what Cal.Fin.Code § 6152(a) explicitly authorizes.[5]

The Superior Court denied the Debtor's request to quash or stay the Commissioner's Cease and Desist Order on July 14, 1995 and continued hearings on the Commissioner's own application to July 25, 1995. Notably, in his "Memorandum of Points and Authorities in Support of Order Enforcing Cease and Desist Order [Financial Code § 8200(f) and (g) ]", the Commissioner responds to Morrow's argument based on 11 U.S.C. § 525(a) by arguing its inapplicability on the grounds that neither the Commissioner nor the Department of Savings and Loan, nor the State of California employed Morrow. The Commissioner maintained that in issuing the Cease and Desist Order, he was not discriminating against Morrow, but "was manifestly carrying out his statutory responsibilities to enforce the law regulating the savings and loan industry in California." In his "Opposi-

under a chapter of this title constitutes an order for relief under such chapter.

11 U.S.C. § 301. The legislative history of § 301 indicates:

The filing of the petition constitutes an order for relief in the case under that chapter. **The section contains no change from current law, except for the use of the phrase 'order for relief' instead of 'adjudication.'**

Notes of Committee on the Judiciary, Senate Report No. 95–989 (Emphasis added).

Collier has also commented that:

Section 301 provides that the filing of a voluntary petition constitutes an 'order for relief' because of the clear power of Congress to permit voluntary bankruptcy without the necessity of an adjudication. By contrast, when the 1898 Act was enacted, voluntary bankruptcy was a concept not thoroughly tested. **This change in the language, in itself, creates no change in the rights of the parties. Section 1(2) of the prior Act defined 'adjudication' to mean 'a determination, whether by decree or by operation of law, that a person is a bankrupt.' Section 18f of the prior Act adopted a plan of automatic adjudication by providing that the filing of a voluntary petition in ordinary bankruptcy operated as an adjudication** with the same effect as a decree of adjudication. The same result is retained under the Code.

King, et al., 2 *Collier on Bankruptcy*, 15th ed., ¶ 301.07, 301–16 (Emphasis added); *See Bank of Marin v. England*, 352 F.2d 186, 189 (9th Cir. 1965) (". . . [I]n the case of voluntary petitions in bankruptcy . . . the filing of a voluntary petition operates as an adjudication."), *rev'd on other grounds*, 385 U.S. 99, 102, 87 S.Ct. 274, 277, 17 L.Ed.2d 197 (1966) (". . . [I]n case of a voluntary

petition (with exceptions not material here) the filing operates as an adjudication . . .").

3. *See Mathews Cadillac, Inc. v. Phoenix of Hartford Ins. Co.*, 90 Cal.App.3d 393, 395, 153 Cal. Rptr. 267 (4 Dist.1979) ("[The debtor] filed a petition . . . seeking to be adjudicated bankrupt. The court adjudicated [the debtor] bankrupt and on June 30, 1971, entered its order of discharge."); *Danielson v. ITT Industrial Credit Co.*, 199 Cal.App.3d 645, 652, 245 Cal.Rptr. 126 (4 Dist.1988) ("The Bankruptcy Act provides that the commencement or continuation of any legal proceeding against the debtor is automatically stayed . . . until adjudication or dismissal of the petition.").

4. *See* Supplement, pp. 4–5.

5. Morrow's argument in full, is that:

Section 525, Title 11 of the Bankruptcy Code specifically proscribes what the Department of Savings & Loan is attempting by the cease and desist order i.e., the termination of Mr. Morrow's employment based solely upon his filing of a bankruptcy petition:

. . . a governmental unit may not . . . deny employment to, terminate the employment of, or discriminate with respect to employment against, a person that is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act . . . solely because such bankrupt or debtor . . . is or has been a debtor under this Title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commencement of the case under this Title or during the case but before the debtor is granted or denied a discharge . . .

tion of Howard C. Morrow to Motion of the Commissioner of the Department of Savings and Loan for Order Enforcing Cease and Desist Order [Financial Code § 8200]" (the "Opposition"), the Debtor reiterated his definitional arguments involving "adjudication", but reserved the lion's share of his brief for a discussion of the anti-discriminatory effect of section 525(a), and the inherent invalidity of the Financial Code section with which it conflicts. The Debtor also argued that confirmation of the Cease and Desist Order would effectively compel the Bank to violate the Bankruptcy Code's anti-discrimination provisions applicable to private entities contained in 11 U.S.C. § 525(b).[6] The Commissioner briefly reiterated his opposition to the applicability of § 525(a) in his "Reply Memorandum of Points and Authorities in Support of Order Enforcing Cease and Desist Order".

The Debtor's application and the Morrow State Court Action were transferred and consolidated with the Commissioner State Court Action. The application to quash or stay was denied and the actions transferred pursuant to a minute order entered July 26, 1995. After a final hearing on August 24, 1995, the state court confirmed the Cease and Desist Order, compelling Morrow's compliance. The "Amended Final Judgment Confirming Order Enforcing Cease and Desist Order" was issued on September 20, 1995 (the "State Court Judgment").

**The Instant Adversary Proceeding and Emergency Motion for Temporary Restraining Order**

On September 8, 1995, the Debtor commenced the instant adversary proceeding in this Court against the same defendants as the Morrow State Court Action, entitled *Morrow v. Torrance Bank, David Bretoi, et al.*, AD# 95–04174, by the filing of a "Complaint for Declaratory Relief, Injunction and Damages" (the "Complaint"). Concurrent with the filing of the Complaint, the Debtor filed a "Notice of and Emergency Motion for Order of Relief Under 11 U.S.C. § 525 or, Alternatively, Motion and Application for Order Shortening Time for Hearing on Motion for Such Relief, or, Alternatively, Emergency Motion for Temporary Restraining Order and Motion for Preliminary Injunction Granting Such Relief." (the "Emergency Motion for TRO") In the Emergency Motion for TRO, the Debtor reargued to this Court that he had been denied employment with the Bank pursuant to Cal.Fin.Code § 6152(a) solely due to his filing of a bankruptcy petition in this Court. The Debtor argued that these acts are violative of the anti-discriminatory provisions of the Bankruptcy Code contained in 11 U.S.C. § 525. In support of his request for entry of a temporary restraining order ("TRO"), the Debtor indicated in his declaration that an annual meeting of the Board was scheduled for September 13, 1995 at which time he would have sufficient proxies to assure his continued control of the Bank and would otherwise be irreparably harmed since upon the contemplated sale of the Bank, no entity or individual would be available from which Morrow could seek damages. Moreover, Morrow's ouster from the Board would effectively remove him from all negotiations pertaining to the Bank's pending sale.

Morrow essentially duplicated his arguments made before the state court in support of his contention that Cal.Fin.Code § 6152(a) must fail in the face of a federal statute, specifically 11 U.S.C. § 525. The Debtor reproduced the words of the Commissioner in his state court "Reply Memorandum of Points and Authorities in Support of Order Enforcing Cease and Desist Order" in support of his conviction that the state statute

11 U.S.C. § 525[(a)].

6. *See* Opposition p. 5, fn. 5.
11 U.S.C. § 525(b) provides:
(b) No private employer may terminate the employment of, or discriminate with respect to employment against, an individual who is or has been a debtor under this title, a debtor or bankrupt under the Bankruptcy Act, or an individual associated with such debtor or bankrupt, solely because such debtor or bankrupt—

(1) is or has been a debtor under this title or a debtor or bankrupt under the Bankruptcy Act;
(2) has been insolvent before the commencement of a case under this title or during the case but before the grant or denial of discharge; or
(3) has not paid a debt that is dischargeable in a case under this title or that was discharged under the Bankruptcy Act.
11 U.S.C. § 525(b).

effects precisely what section 525 disallows. The Commissioner had argued that the California legislature apparently determined that a debtor in bankruptcy "in most cases, demonstrating an inability to manage his or her own personal finances" should be precluded from participating in the affairs of a financial institution. The Debtor cited the identical California law presented to the state court judge, asserting that it is in harmony with the principle that the state may not lawfully deny any privilege to an individual merely because that individual has filed for bankruptcy protection. *Grimes v. Hoschler*, 12 Cal.3d 305, 115 Cal.Rptr. 625, 525 P.2d 65 (1974), *cert. denied* 420 U.S. 973, 95 S.Ct. 1394, 43 L.Ed.2d 653 (1975); *Kwasnik v. State Bar of California*, 50 Cal.3d 1061, 269 Cal.Rptr. 749, 791 P.2d 319 (1990). The Debtor further dismissed any notion that the Commissioner is somehow exempt from this prohibition on the grounds that neither he nor the Department of Savings and Loan is an employer of the Debtor by pointing to subsection (a) of § 525 which prohibits a governmental unit from revoking any grant to a debtor solely because of his insolvency. The Debtor referred to the *Grimes* case, which involved the denial of a contractor's license, in which the California Supreme Court noted that a scheme which revoked a contractor's license merely because he sought to have obligations discharged in bankruptcy frustrated the purposes of federal law. Similarly, Morrow argued, the Financial Code offers similar difficulty. The other case cited by the Debtor, *Kwasnik*, involved the State Bar's refusal to allow an attorney to practice law due to his discharge of a wrongful death judgment against him. Again, Morrow noted that the highest court in this state reasoned:

> [T]he State Bar would violate the Bankruptcy Act if its sole reason for denying certification were a moral obligation to the [victim's] family. (*See* 11 U.S.C. § 525(a) ...) ... In addition, it would be a violation of the supremacy clause of the federal Constitution ... to act so as to interfere with or frustrate the purpose of Congress in enacting the Bankruptcy Act....

*Kwasnik*, 50 Cal.3d at 1069–70, 269 Cal.Rptr. 749, 791 P.2d 319 (Citations and footnotes omitted). The foregoing prompted the Debtor's argument that the state statute is in direct conflict with section 525, in violation of the Supremacy Clause.

Finally, the Debtor urged the Court to depart from the holding of the state court judge and interpret the phrase "adjudicated as bankrupt" to mean entry of a discharge.

In support of his interpretation of the state statute, the Debtor discounted the Commissioner's argument to the state court that the 1978 amendments to the Bankruptcy Code somehow changed the interpretation of "adjudicate" in the Financial Code. Thus, the Debtor indicates that it is significant that the Financial Code section was purportedly enacted after the 1978 amendments which deleted the term "adjudication" from Bankruptcy parlance. Utilizing the dictionary definition of "adjudication" as "to hear and settle", the Debtor stated that the plain meaning of the term contemplates some Court action. He argues simply that if the California legislature had intended the innocent act of filing a petition to be sufficient to trigger the provision, it would have been so enacted.

■ At the September 12, 1995 hearing on the Emergency Motion for TRO, the Commissioner accused Morrow of attempting to "take another bite of the apple", since he failed to prevail in state court. The Commissioner urged this Court to reject the caselaw cited by the Debtor, arguing that they were inapposite since they, and § 525(a) itself, only involved specific grants of power through licenses, permits, or the employment relationship, none of which was the case here. Notwithstanding the fact that this Court called attention to language in the Code provision applying § 525 to the enumerated legal relationships or "other similar grant[s]", the Commissioner urged this Court to read the section narrowly. The Debtor reminded the Court of the urgent need for relief, since a meeting of the Board was scheduled the following day, and noted that Morrow received $1,000.00 monthly as compensation for his directorship. This Court rejected the constrained interpretation of § 525 urged by the Commissioner and, after considering the applicable tests in this cir-

cuit [7], granted the TRO requested by Morrow, preserving the status quo pending further hearings before this Court. This Court found that a balancing of hardships tipped in favor of the Debtor given the potential loss of his position and compensation, versus the absence of any significant hardship to the Commissioner.[8] Additionally, this Court noted for the record that Morrow appeared to enjoy a substantial likelihood of success on the merits of his claims since the effect of the Cease and Desist Order was to effectively terminate his directorship of the Bank and eliminate benefits and compensation received by virtue of that position, simply due to his commencement of a bankruptcy case in this Court. Significantly, in light of the existence of prior state court adjudication of similar (if not identical) issues, the Court urged the parties to brief the possible application of the doctrines of collateral estoppel and res judicata. The Court scheduled a hearing on the issue of whether to enter a preliminary injunction on September 28, 1995.

### The Preliminary Injunction

■ Prior to the preliminary injunction hearing, the Commissioner filed additional opposition papers, in which he reiterated many of the arguments presented both in state court and this tribunal. The Commissioner also set forth a new argument, asking this Court to invoke the *Colorado River* doctrine (from *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 815, 96 S.Ct. 1236, 1245, 47 L.Ed.2d 483 (1976)), designed to promote "principles of wise judicial administration, specifically the prevention of forum shopping and the avoidance of duplicative litigation", and abstain from hearing the instant proceeding. *See American International Underwriters (Philippines), Inc. v. Continental Insurance Company*, 843 F.2d 1253, 1257 (9th Cir.1988). The factors to be considered in contemplating application of the doctrine include (1) which court first assumed jurisdiction over the property in dispute; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation;[9] and (4) the order in which jurisdiction was obtained. *Colorado River*, 424 U.S. at 818, 96 S.Ct. at 1246. In *American International Underwriters*, the Ninth Circuit noted that "[t]hese factors are to be applied in a pragmatic and flexible way, as part of a balancing process rather than as a 'mechanical checklist'", *Id.*, citing *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 16, 103 S.Ct. 927, 937, 74 L.Ed.2d 765 and that "as part of this flexible approach, it may be important to consider additional factors not spelled in the *Colorado River* opinion, such as the probable inadequacy of the state court proceedings." *Id.*

The Commissioner conceded the inapplicability of the first two factors in his papers and urged this Court to consider the dangers of piecemeal litigation where an exercise of jurisdiction by this Court would require duplication of time and effort by the parties, as well as the fact that state court jurisdiction was obtained first. The Commissioner noted that the state court made "substantial progress" in deciding the substantive issue raised

---

7. In general, injunctive relief will only be granted on the basis of irreparable injury and the inadequacy of legal remedies. *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312, 102 S.Ct. 1798, 1803, 72 L.Ed.2d 91 (1982). The Ninth Circuit has utilized two somewhat different tests. First, the so-called "traditional test" focuses on whether the moving party has established (1) a fair chance of success on the merits, at the minimum; (2) a significant threat of irreparable injury; (3) at least a minimal tip in the balance of hardships in the moving party's favor (e.g. the risk of irreparable injury to plaintiff if the injunction is denied must exceed the foreseeable hardship to defendant if it is granted); and (4) whether any public interest favors granting the injunction. *American Motorcyclist Ass'n. v. Watt*, 714 F.2d 962, 965 (9th Cir.1983).

Second, an "alternative test" allows the moving party to meet its burden by showing either (1) a combination of probable success on the merits and the possibility of irreparable injury; or (2) serious questions as to these matters (i.e. fair chance of success on the merits) and the balance of hardships tips sharply in the moving party's favor. *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1381 (9th Cir.1987).

8. The Bank did not appear.

9. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *American International Underwriters*, 843 F.2d at 1258.

by Morrow and cited *American International Underwriters* for the principle that the Debtor is bound by the decision of his forum of choice. *American International Underwriters*, 843 F.2d at 1259.

The Commissioner believed that the Superior Court already held that § 525 did not conflict with Cal.Fin.Code § 6152(a). Also, since Morrow "chose" to litigate the matter in state court,[10] the Commissioner explains that the Debtor "should be bound by [his] choice absent compelling reasons to seek relief in another forum." *Id.*, 843 F.2d at 1257.

The Commissioner then argued that Morrow had failed to meet his burden entitling him to a preliminary injunction. Since Morrow sought to enjoin a government agency from enforcing the law, a stricter standard applied—requiring real and immediate threat of injury not conjectural or hypothetical. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 113, 103 S.Ct. 1660, 1671, 75 L.Ed.2d 675 (1983). The Commissioner asserted that Morrow had failed to show how denial of the requested injunctive relief will lead to irreparable harm.

Because the Commissioner sought to limit application of § 525 to the types of legal relationships explicitly listed within subsection (a), he distinguished the seminal Supremacy Clause case of *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971) (the inspiration for § 525) and *Grimes* on the grounds that both cases involve the award of licenses, and *Kwasnik*, since that case involved admission to practice law.[11] Instead, the Commissioner suggested that the Court follow the reasoning of *In re Exquisito Services, Inc.*, 823 F.2d 151 (5th Cir. 1987), which stressed a narrow reading of the provision to cover only discrimination based on non-payment of a discharged debt. The Commissioner also cited *In re Goldrich*, 771 F.2d 28 (2nd Cir.1985) which followed a similar approach.

■ The Debtor argued that he never submitted his rights under § 525 before the state court since it was the Commissioner who initiated the cease and desist enforcement action in that court. Moreover, the Debtor insisted that it would be highly improper for the Bankruptcy Court to abstain in this matter since it is the Court's duty to administer rights under the Bankruptcy Code.[12] The Debtor cited the Ninth Circuit

---

**10.** This position is somewhat specious since, by statute, the Commissioner may enforce a cease and desist order only in state court pursuant to Cal.Fin.Code § 8200(f). More importantly, Cal. Fin.Code § 8200(g) also affords exclusive jurisdiction of the enforcement of a cease and desist order whether upon application of the Commissioner or the person aggrieved.

**11.** Both *Grimes* and *Kwasnik* are discussed, *supra*, at 801.

**12.** The Debtor's assertion, at the preliminary injunction hearing/trial, that leaving adjudication of the issue of the applicability of 11 U.S.C. § 525 to the state court in the face of this Court's "exclusive" jurisdiction over bankruptcy matters is an overstatement of this Court's subject matter jurisdiction.

The California Superior Court considering the confirmation of the Commissioner's Cease and Desist Order and Morrow's related claim for an injunction barring its application is a court of general and virtually unlimited jurisdiction. *See* Cal.Code Civ.Proc. § 410.10 ("A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States.").

By contrast, this Court, is empowered to hear the instant proceeding upon automatic reference from the United States District Court for the Central District of California pursuant to 28 U.S.C. § 157(a). Subsection (b) of section 157 of title 28 permits this Court to "hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section ...". The jurisdictional grant (to the district court, and, by extension, to this Court) in bankruptcy matters is made pursuant to 28 U.S.C. § 1334 which provides:

(a) Except as provided in subsection (b) of this section, **the district court shall have original and exclusive jurisdiction of all cases under title 11.**

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, **the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.**

. . . . .

28 U.S.C. § 1334 (Emphasis added). The Ninth Circuit, quoting with approval the Fifth Circuit's decision in *In re Wood*, 825 F.2d 90, 96–97 (5th Cir.1987) has noted that proceedings "arising under" title 11 include "proceedings that involve a cause of action created or determined by a statutory provision of title 11". *In re Harris Pine Mills*, 44 F.3d 1431, 1435 (9th Cir.1995). The

case of *Gonzales v. Parks,* 830 F.2d 1033 (9th Cir.1987) for the proposition that state courts have no subject matter jurisdiction to determine whether a party's claim for relief under a federal law in federal court is appropriate.[13] Naturally, the Debtor rejected the narrow construction of § 525, noting that the specific language of the section is written to protect against the loss of licenses, employment, *or other similar privilege.* During oral argument, the Debtor noted that his preemption argument could stand even absent § 525, since that section merely codified the Supreme Court's general holding contained in *Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971), which contains no such limitation. The Debtor also noted that, notwithstanding the allegedly improper acts of the Commissioner, subsection (b) of § 525 would separately bar the Bank from interfering with Morrow's directorship pursuant to the Cease and Desist Order.

The Bank and Board also filed a response to Morrow's petition for a preliminary injunction, in which they took no position on the issue of whether the Debtor should remain as a director of the Bank, and provided this Court with a copy of the State Court Judgment.

Although none of the parties decided to brief the issues of *res judicata* and collateral estoppel as suggested by the Court at the prior hearing, counsel for the parties engaged in dialogue in open court during which it was essentially stipulated between the parties that the doctrines would not apply since the state court judgment would not be final for approximately sixty (60) days, assuming no appeal or reopening of judgment. In reliance on these representations and the

absence of any briefing on the issues, the Court entered its preliminary injunction.

With respect to the possible application of *Colorado River* abstention, urged by the Commissioner, this Court found that the requisite "exceptional circumstances" were not present in the case at bar to support the conclusion that an order to the parties to repair to the state court would clearly serve an important countervailing interest. *See Colorado River,* 424 U.S. at 813, 96 S.Ct. at 1244. ("Abstention from the exercise of federal jurisdiction is the exception, not the rule. 'The doctrine of abstention ... is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.'") (Citation omitted). The Court rejected the notion that the mere existence of the related state court proceedings suggested abstention. *See Alabama Pub. Serv. Comm'n. v. Southern R. Co.,* 341 U.S. 341, 361, 71 S.Ct. 762, 774, 95 L.Ed. 1002 (1951) (Frankfurter, J., concurring in result) ("[I]t was never a doctrine of equity that a federal court should exercise its judicial discretion to dismiss a suit merely because a State court could entertain it."), quoted in *Colorado River,* 424 U.S. at 813–14, 96 S.Ct. at 1244–45; *McClellan v. Carland,* 217 U.S. 268, 282, 30 S.Ct. 501, 505, 54 L.Ed. 762 (1910) ("Generally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction ...'"), quoted in *Colorado River,* 424 U.S. at 817, 96 S.Ct. at 1246. Additionally, the Court noted that the existence of a possible constitutional question did not by itself justify abstention,[14] emphasizing that "[i]ndeed, the presence of a federal basis for jurisdiction may raise the

---

13. The Debtor's reliance on *Gonzales* is misplaced. *Gonzales* involved a state court collateral attack on the propriety of the filing of a bankruptcy petition. As discussed *supra* at fn. 12, the bankruptcy petition itself is within the exclusive jurisdiction of federal courts pursuant to 28 U.S.C. § 1334(a). Of course, this has no application to proceedings such as the instant one, over which state courts share concurrent jurisdiction. *See* 28 U.S.C. § 1334(b).

14. *See Harman v. Forssenius,* 380 U.S. 528, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965).

---

instant proceeding, rooted in a particular provision of title 11, clearly falls within this definition. As such, pursuant to 28 U.S.C. § 1334(b), this Court's jurisdiction is original, but "not exclusive". *See Wood,* 825 F.2d at 92 (With respect to bankruptcy matters, district courts enjoy exclusive jurisdiction only over "the bankruptcy petition itself"). Thus, the state court is of equal and competent jurisdiction to hear and determine Morrow's claim pursuant to § 525. Indeed, the *Grimes* and *Kwasnik* cases—both decided by California courts construing § 525—cited by the Debtor highlight the fallacy of his position.

level of justification needed for abstention." *Colorado River,* 424 U.S. at 815 n. 21, 96 S.Ct. at 1245 n. 21, citing *Burford v. Sun Oil Co.,* 319 U.S. 315, 318 n. 5, 63 S.Ct. 1098, 1099 n. 5, 87 L.Ed. 1424 (1943); *Hawks v. Hamill,* 288 U.S. 52, 61, 53 S.Ct. 240, 243, 77 L.Ed. 610 (1933).

With respect to the remaining two of the four factors (the Commissioner having conceded the inapplicability of the other two) to be considered, this Court, in accordance with the balancing approach advocated by *Cone* and *American International Underwriters,* weighed the advanced stages of both the state and federal proceedings, proper grounds for federal jurisdiction, the existence of a state statutory scheme providing for enforcement of the Commissioner's cease and desist orders in California's state courts militating against a finding of forum shopping, the absence of any findings by the state court with respect to federal issues, and this Court's "virtually unflagging obligation" to exercise its jurisdiction. This Court exercised its discretion in holding that it would not apply the *Colorado River* doctrine to the instant proceeding.

Pursuant to Fed.R.Bankr.P. 7065 and Fed. R.Civ.P. 65(a), this Court consolidated trial on the injunction and underlying declaratory judgment action with the preliminary injunction hearing.

## II. DISCUSSION

### Issues Presented

The existence of essentially parallel state court proceedings involving the same subject matter requires this Court to make careful consideration of the jurisdictional interplay and possible conflict between the activities in these two courts, in addition to the problems presented by state law which is apparently in conflict with the provisions of the Bankruptcy Code. This review is mandated by considerations of comity with state courts, a concern for the duplication of judicial resources, the parties' needs for speedy and final adjudication of pending litigation, and principles of federalism. Accordingly, this Court must consider:

● Whether the actions of the Commissioner violate the automatic stay provisions of the Bankruptcy Code contained in 11 U.S.C. § 362(a);

● Whether application of collateral estoppel or *res judicata* pursuant to the Full Faith and Credit Statute (28 U.S.C. § 1738) or the Rooker–Feldman Doctrine preclude this Court's consideration of whether 11 U.S.C. § 525 preempts a conflicting portion of Cal. Fin.Code § 6152(a);

● Whether, in light of the existence of the state court proceedings involving the parties, this Court should abstain from deciding the Debtor's claims;

● Whether this Court is precluded by the Anti–Injunction Act (28 U.S.C. § 2283) from barring enforcement of the State Court Judgment;

● Whether application of Cal.Fin.Code § 6152(a) to persons "adjudicated as bankrupt" is barred by the Supremacy Clause of the United States Constitution due to its direct conflict with 11 U.S.C. § 525; and

● Whether the Debtor is entitled to a permanent injunction, enjoining his removal from the Board by the Commissioner and/or the Bank pursuant to the Cease and Desist Order of the Commissioner.

### The Automatic Stay

The filing of Morrow's bankruptcy petition in February 1995, triggered the operation of the automatic stay provisions of the Bankruptcy Code. 11 U.S.C. § 362(a) provides in relevant part:

> (a) Except as provided in subsection (b) of this section, a petition ... operates as a stay, applicable to all entities, of—
>
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title
> ...

11 U.S.C. § 362(a). The term "entity", as utilized in this section, has been defined to include "person" and "governmental unit". 11 U.S.C. § 101(15). In turn, "governmental unit" has been defined broadly to include

within its ambit, a "state" or any "department", "agency", or "instrumentality" of "a State". 11 U.S.C. § 101(27).

Section (b) of 11 U.S.C. § 362 excepts from the automatic stay:

> . . . . .
>
> (4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

11 U.S.C. § 362(b)(4). One bankruptcy court has remarked: "This subsection 'is intended to be given a narrow construction in order to permit governmental units to pursue actions to protect the public health and not to apply to actions by a governmental unit to protect a pecuniary interest in property ...". *In re Ryan,* 15 B.R. 514, 519 (Bankr.D.Md.1981), quoting 124 Cong.Rec. H11, 092 (daily ed. Sept. 28, 1978) (remarks of Rep. Edwards). The *Ryan* court believed that Congress intended the governmental action exception to the automatic stay to include acts against the Debtor necessary to "prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws." *Id.,* quoting H.R.Rep. No. 595, 95th Cong., 1st Sess. 343 (1977), reprinted in U.S.Code Cong. & Admin.News 5787, 6299, quoted in *In re James,* 940 F.2d 46, 50 (3rd Cir.1991).

As a threshold matter, this Court must consider whether the actions of the Commissioner violated the automatic stay, thereby rendering the subsequent Cease and Desist Order and subsequent State Court Judgment void. *Parker v. Bain,* 68 F.3d 1131, 1137 (9th Cir.1995); *Hillis Motors v. Hawaii Auto. Dealers' Ass'n.,* 997 F.2d 581 (9th Cir. 1993); *Phoenix Bond & Indemnity Co. v. Shamblin (In re Shamblin),* 890 F.2d 123, 125 (9th Cir.1989). While this Court notes at the outset that the government police power exception to the Bankruptcy Code's stay provisions seems to be applicable to the powers asserted by the Commissioner, it appears unnecessary to reach the issue since, as a matter of logic, (1) the exception applies only to acts within the ambit of § 362(a)(1); (2) subsection (a)(1) of § 362 involves acts against the debtor which were or could have been commenced *prior to* the commencement of the bankruptcy case; and (3) since the Cease and Desist Order was predicated upon Cal.Fin.Code § 6152(a), which forbids Morrow's participation as a director of the Bank *upon the filing* of a bankruptcy petition. As such, the Commissioner's actions appear not to be barred by the automatic stay in the first instance.

## Preclusion: *Res Judicata* and Collateral Estoppel

█ Notwithstanding the apparent agreement between the parties on this issue, and their independent decisions to forego briefing, this Court is compelled to examine the possible preclusive effect of the State Court Judgment pursuant to the "Full–Faith and Credit Statute", 28 U.S.C. § 1738. Under § 1738, state court proceedings "shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken." [15] Similarly, the *res judicata* and collateral estoppel effect of a state court judgment [16] is determined by application of state law, *see Heck v. Humphrey,* —— U.S. ——, 114 S.Ct. 2364, 2369 n. 2, 129 L.Ed.2d 383 (1994); *In re*

---

**15.** A federal court must give full faith and credit to a state court judgment only if that court had jurisdiction over the subject matter of the litigation or the parties before it. *See Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 805, 105 S.Ct. 2965, (1985); *Underwriters National Assurance Co. v. North Carolina Life and Accident and Health Insurance Guaranty Association,* 455 U.S. 691, 704–05, 102 S.Ct. 1357, 1366, 71 L.Ed.2d 558 (1982); *Nevada v. Hall,* 440 U.S. 410, 421, 99 S.Ct. 1182, 1188, 59 L.Ed.2d 416 (1979), *reh'g denied,* 441 U.S. 917, 99 S.Ct. 2018, 60 L.Ed.2d 389 (1979); *Heiser v. Woodruff,* 327 U.S. 726, 66 S.Ct. 853, 90 L.Ed. 970 (1946), *reh'g denied,* 328

U.S. 879, 66 S.Ct. 1335, 90 L.Ed. 1647 (1946), cited in *In the Matter of Brady, Texas, Municipal Gas Corporation,* 936 F.2d 212, 218 (5th Cir. 1991), *cert. denied sub nom. Sanders v. City of Brady, Texas,* 502 U.S. 1013, 112 S.Ct. 657, 116 L.Ed.2d 748 (1991). For a discussion of the California Superior Court's concurrent jurisdiction to decide the Debtor's claim pursuant to 11 U.S.C. § 525, *see* discussion at fn. 12, *supra.*

**16.** A judgment is defined as "any judgment, order or decree from which an appeal lies." Cal. Rules of Court 136(g).

*Nourbakhsh,* 67 F.3d 798 (9th Cir.1995), regardless of whether the state court determined a state or federal issue.[17] *Sider v. Valley Line,* 857 F.2d 1043, 1046 (5th Cir. 1988); *Nanavati v. Burdette Tomlin Memorial Hospital,* 857 F.2d 96, 111 (3rd Cir. 1988), *cert. denied,* 489 U.S. 1078, 109 S.Ct. 1528, 103 L.Ed.2d 834 (1989).

 In order for the instant proceeding to be barred by the doctrine of *res judicata:* (1) the consolidated Morrow State Court Action and Commissioner State Court Action must have involved the same claim as the instant proceeding; (2) the state court must have reached a final judgment on the merits; and (3) the state court actions and the instant proceeding must have involved the same parties or their privies. *Blonder–Tongue Laboratories v. University of Illinois Found.,* 402 U.S. 313, 323–24, 91 S.Ct. 1434, 1440, 28 L.Ed.2d 788 (1971); *Nordhorn v. Ladish Co., Inc.,* 9 F.3d 1402 (9th Cir.1993). More specifically, in California, this doctrine has been simply expressed to provide that "[a] final judgment on the merits in favor of a defendant serves as a complete bar to further litigation on the same cause of action." *Slater v. Blackwood,* 15 Cal.3d 791, 795, 126 Cal.Rptr. 225, 543 P.2d 593 (1975), cited in *Castro v. Higaki,* 31 Cal.App.4th 350, 357, 37 Cal.Rptr.2d 84, 87 (1994).[18] Any equitable concerns regarding the "correctness" of the earlier judgment are unavailing since, "for purposes of res judicata, an erroneous judgment is as conclusive as a correct one." *Valerio v. Boise Cascade Corp.,* 177 Cal.App.3d 1212, 1223, 223 Cal.Rptr. 592 (1986), *see also Slater,* 15 Cal.3d at 797, 126 Cal.Rptr. 225,

543 P.2d 593, cited in *Castro,* 31 Cal.App.4th at 359, 37 Cal.Rptr.2d at 88. Nor should a subsequent court review the substance of the prior court's ruling since "it is the validity of the court's action, not ... the reason for its action, which is reviewable." *Weinstock v. Eissler,* 224 Cal.App.2d 212, 225, 36 Cal.Rptr. 537.[19]

 In determining whether unity of claims exists between the earlier and later proceedings, California has adopted a "primary rights" theory. *See Craig v. County of Los Angeles,* 221 Cal.App.3d 1294, 1301, 271 Cal.Rptr. 82 (1990). "The primary right is determined by the harm suffered, regardless of the number of legal theories asserted." *Castro,* 31 Cal.App.4th at 357, 37 Cal.Rptr.2d at 87, citing *Wulfjen v. Dolton,* 24 Cal.2d 891, 894, 151 P.2d 846 (1944). In the instant case, the potential harm complained of is identical to the harm addressed by the state court; specifically, Morrow's removal from the Bank's Board in accordance with the Cease and Desist Order.

 *Res judicata* only extends from final judgments on the merits. *See Victa v. Merle Norman Cosmetics, Inc.,* 19 Cal. App.4th 454, 460, 24 Cal.Rptr.2d 117, 121 (1993). Under state law, California state court judgments are not final until the period during which an aggrieved party may file an appeal has expired, or, in cases of appeal, the judgment has been affirmed and the case remitted.[20] *See People v. Mitchell Bros.' Santa Ana Theater,* 101 Cal.App.3d 296, 161 Cal.Rptr. 562 (1980).[21] Accordingly, since

---

17. *See Merry v. Coast Community College Dist.,* 97 Cal.App.3d 214, 229, 158 Cal.Rptr. 603 (4 Dist.1979).

18. *See also* Cal.Code Civ.Proc. § 1908.

19. *See Schultz v. Harney,* 27 Cal.App.4th 1611, 1618, 33 Cal.Rptr.2d 276, 279 (1994) ("It is established beyond all reasonable dispute that a final judgment or order, even if erroneous or clearly contrary to a statute, is res judicata if the court had jurisdiction in the fundamental sense, that is, jurisdiction over the subject matter and the parties. (*Moffat v. Moffat* (1980) 27 Cal.3d 645, 655, 165 Cal.Rptr. 877, 612 P.2d 967; *Hollywood Circle, Inc. v. Dept. of Alcoholic Beverage Control* (1961) 55 Cal.2d 728, 733, 13 Cal.Rptr. 104, 361 P.2d 712; *Signal Oil and Gas Co. v. Ashland Oil and Refining Co.* (1958) 49 Cal.2d

764, 777, 322 P.2d 1; *Pacific Mutual Life Ins. Co. v. McConnell* (1955) 44 Cal.2d 715, 725, 285 P.2d 636 [(1956), *cert. denied sub nom. Gentles v. McConnell,* 350 U.S. 984, 76 S.Ct. 472, 100 L.Ed. 851 (1956)]. In short, a court has jurisdiction to be wrong.").

20. By contrast, judgments of federal courts, such as this one, are considered final for *res judicata* and collateral estoppel purposes as soon as rendered, notwithstanding appeal. *See Prager v. El Paso National Bank,* 417 F.2d 1111, 1112 (5th Cir.1969).

21. *See also* 7 Witkin, Cal.Procedure (3rd ed. 1985, Judgment §§ 211, 212, at pp. 648–649):
 The doctrine of res judicata applies only to judgments and orders which are final in the

the State Court Judgment was issued less than two weeks before the instant trial, the doctrine of *res judicata* has no effect upon this Court's ability to review the issues presented by the Debtor.

■■■■■ Under the sister doctrine of collateral estoppel, issues "necessarily and finally adjudicated" in the consolidated Morrow State Court Action and Commissioner State Court Action may bar relitigation in this Court. *See Guild Wineries v. Whitehall Co.*, 853 F.2d 755 (9th Cir.1988); *Texas Employers' Insurance Association v. Jackson*, 862 F.2d 491, 500 (5th Cir.1988), *cert. denied*, 490 U.S. 1035, 109 S.Ct. 1932, 104 L.Ed.2d 404 (1989). In California, "[a] party is collaterally estopped from relitigating an issue previously adjudicated if: (1) the issue necessarily decided in the previous suit is identical to the issue sought to be relitigated; (2) there was a final judgment on the merits of the previous suit; and (3) the party against whom the estoppel is asserted was a party, or in privity with a party, to the previous suit." *In re Joshua J.*, 39 Cal.App.4th 984, 993, 46 Cal. Rptr.2d 491, 497 (4 Dist.), citing *Producers Dairy Delivery Co. v. Sentry Ins. Co.*, 41 Cal.3d 903, 910, 226 Cal.Rptr. 558, 718 P.2d 920 (1986). The requirement that an issue be "actually litigated" merely demands that the issue be "properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined". Restatement 2d Judgments, § 27, comment d., at p. 255, cited in *Barker v. Hull*, 191 Cal.App.3d 221, 226, 236 Cal.Rptr. 285, 288 (1987). The party who seeks to assert collateral estoppel bears

the burden of proof of showing that the issue was "fully presented to the court below and finally determined." *Id.* The reviewing court may look to the opinion of the prior judge in order to determine the scope of the previous judgment. *Tevis v. Beigel*, 156 Cal. App.2d 8, 319 P.2d 98 (1957); *Carroll v. Puritan Leasing Co.*, 77 Cal.App.3d 481, 491, 143 Cal.Rptr. 772 (1978); 7 Witkin, Cal.Procedure (3rd ed. 1985, Judgments, § 256, p. 694).

■■■■ In the instant case, while the State Court Judgment provides little guidance to this Court in determining the identity of the issues presented,[22] the parties essentially conceded at the preliminary injunction hearing/trial that the § 525 issues were raised and discussed at the final hearing confirming the Cease and Desist Order which gave rise to the State Court Judgment. This conclusion also is amply supported by the supplemental papers submitted by the parties in connection with that hearing, which include arguments from both the Debtor and Commissioner on this issue. Similarly, there is little dispute that the parties to both actions are identical. However, as was the case with this Court's application of *res judicata*, discussed immediately *supra*, the absence of a final judgment precludes satisfaction of the second element of collateral estoppel and bars application of the doctrine.

**The Rooker–Feldman Doctrine**

■■■■■ The "Rooker–Feldman" Doctrine[23] bars a lower federal court from con-

---

sense that no further judicial act remains to be done to end the litigation....

. . . . .

A judgment or order may be final in nature, but it does not become res judicata until it is final in the other sense of being free from direct attack. Hence, while an appeal is pending, or, though no appeal has been taken, the time for appeal has not expired, the judgment is not conclusive.

**22.** The State Court Judgment encompasses both the Morrow State Court Action and the Bank State Court Action, and provides in operative part:

IT IS HEREBY ORDERED ... that:
1. Howard C. Morrow automatically ceased to be a director of Torrance Bank upon the filing of his Chapter 7 bankruptcy petition;

2. The Commissioner's cease and desist order dated June 28, 1995, was in all respects lawfully authorized and properly issued;
3. The Court's Order Compelling Compliance With Cease and Desist Order, issued herein on July 13, 1995 is confirmed;
4. Howard C. Morrow shall take nothing by way of these consolidated cases; and
5. Judgment be entered accordingly against Howard C. Morrow and in favor of the Commissioner and all other parties in these consolidated cases.

**23.** The doctrine is named after the cases giving rise to the rule. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476, 103 S.Ct. 1303, 1311, 75 L.Ed.2d 206 (1983).

ducting a virtual "review" of a state court judgment for errors in construing federal law or constitutional claims "inextricably linked" with the state court judgment.[24] Although not addressed or contemplated by the parties, this Court is empowered to raise and construe the doctrine as a possible limitation on its jurisdiction *sua sponte*. *Ritter v. Ross*, 992 F.2d 750, 752 (7th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 694, 126 L.Ed.2d 661 (1994).[25] The doctrine has been found to have a similar effect and underpinnings as the preclusion doctrines discussed above. *See Guarino v. Larsen*, 11 F.3d 1151, 1157 (3rd Cir.1993) ("Like claim preclusion, Rooker–Feldman is partly concerned with finality.... Once litigants' claims have been adjudicated in the state court system, they should not also have access to the entire federal court system."); *Ivy Club v. Edwards*, 943 F.2d 270, 292 (3rd Cir.1991) (doctrine "has much the same effect as claim and issue preclusion"), *cert. denied sub nom. Del Tufo v. Ivy Club*, 503 U.S. 914, 112 S.Ct. 1282, 117 L.Ed.2d 507 (1992). The doctrine applies even in cases where the state court decision involves issues of federal constitutional law, *Feldman*, 460 U.S. at 484–86, 103 S.Ct. at 1316–17, citing *Doe v. Pringle*, 550 F.2d 596, 599 (10th Cir.1976), *cert. denied* 431 U.S. 916, 97 S.Ct. 2179, 53 L.Ed.2d 227 (1977), since, state courts are equally competent as federal courts to decide such issues. *Allen v. McCurry*, 449 U.S. 90, 105, 101 S.Ct. 411, 420, 66 L.Ed.2d 308 (1980); *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 611, 95 S.Ct. 1200, 1211, 43 L.Ed.2d 482 (1975), *reh'g denied*, 421 U.S. 971, 95 S.Ct. 1969, 44 L.Ed.2d 463 (1975). The absence of such a doctrine would result in wasted judicial resources and unneeded friction between state and federal tribunals. *Atlantic Coast Line R. Co. v. Locomotive Engineers*, 398 U.S. 281, 286, 90 S.Ct. 1739, 1743, 26 L.Ed.2d 234 (1970).

The roots of the doctrine stretch back over seventy years to the *Rooker* decision, in which the Supreme Court rejected the arguments of an aggrieved party who had followed the action through the Indiana state courts, only to file suit in federal district court alleging that the state courts had relied upon an unconstitutional statute. The high court held that the district court lacked jurisdiction to correct the state court's allegedly defective decision-making on the grounds that district courts were only able to exercise original jurisdiction and that only the Supreme Court had authority to review state supreme court decisions for alleged errors involving federal law. *Rooker*, 263 U.S. at 416, 44 S.Ct. at 150.

In 1983, the Supreme Court decided *Feldman*, which involved the District of Columbia Court of Appeals' refusal to admit the plaintiff to the bar of the district on the grounds that he did not attend an American Bar Association accredited law school. Feldman sought declaratory relief, asking the district court to determine that the District of Columbia court's actions in refusing to admit him to practice constituted a violation of the Fifth Amendment to the Constitution and the Sherman Act. Feldman also sought injunctive relief either in the form of compelling admission, or requiring the bar to permit him to sit for its examination. Again, the court held that the district court lacked subject matter jurisdiction to hear the Fifth Amendment and antitrust claims on the grounds that these federal issues were "inextricably intertwined" with the lower court's decision. *Feldman*, 460 U.S. at 486–87, 103 S.Ct. at 1317. The district court could properly exercise its jurisdiction over Feldman's *general* constitutional challenge to the rule requiring attendance at an accredited school since the court's consideration of the claim would not constitute impermissible "review". As such,

---

**24.** The United States Supreme Court, in its role as the highest court in all state court systems, has exclusive jurisdiction to review state court judgments for errors in construing federal law. *See* 28 U.S.C. § 1257; *Hale v. Harney*, 786 F.2d 688, 691 (5th Cir.1986); *Landers Seed Co. v. Champaign National Bank*, 15 F.3d 729, 732 (7th Cir. 1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 62, 130 L.Ed.2d 20 (1994); *Port Authority Police Benevolent Association, Inc. v. Port Authority of*

*New York*, 973 F.2d 169, 177 (3rd Cir.1992); *Blue Cross & Blue Shield v. Weiner*, 868 F.2d 1550, 1554–1556 (11th Cir.), *cert. denied*, 493 U.S. 892, 110 S.Ct. 239, 107 L.Ed.2d 190 (1989).

**25.** A federal court may raise the issue of subject matter jurisdiction *sua sponte*. *See Rockwell Int'l Credit Corp. v. United States Aircraft Ins. Group*, 823 F.2d 302 (9th Cir.1987).

it has been routinely held that a district court *does* maintain jurisdiction of a general constitutional challenge which does not involve a final state court decision. *Feldman,* 460 U.S. at 482–84, n. 16, 103 S.Ct. at 1316, n. 16; *Tofano v. Supreme Court of Nevada,* 718 F.2d 313, 314 (9th Cir.1983). It has also been acknowledged that the distinction between impermissible appeal and permissible constitutional challenge is often difficult to make. *Feldman,* 460 U.S. at 485, 103 S.Ct. at 1316; *Razatos v. Colorado Supreme Court,* 746 F.2d 1429, 1433 (10th Cir.1984), *cert. denied* 471 U.S. 1016, 105 S.Ct. 2019, 85 L.Ed.2d 301 (1985).

The Supreme Court in *Feldman* has characterized this difficult inquiry in the case before it as:

> [i]f the constitutional claims to a United States district court are inextricably intertwined with the state court's denial in a judicial proceeding of a particular plaintiff's application for admission to the state bar, then the district court is in essence being called upon to review the state court decision.

*Feldman,* 460 U.S. at 482–84 n. 16, 103 S.Ct. at 1316 n. 16. The Tenth Circuit has remarked that the *Feldman* characterization is far from helpful, and developed its own formulation that claims are "inextricably intertwined" when the district court must "scrutinize not only the challenged rule itself, but the [state court's] application of the rule ...". *Razatos,* 746 F.2d at 1433. If the "reviewing" court is compelled to examine more than the rule in question by itself—specifically, an examination of the rule as applied by the state court to the particular facts of the plaintiff's case—the district court will lack jurisdiction. *Id.*

The Eleventh Circuit has interpreted *Feldman* to advocate a more broad formulation,

concluding that "the Rooker–Feldman doctrine applies when the federal plaintiff had a reasonable opportunity to raise the federal claim in the state court proceedings." *Weiner,* 868 F.2d at 1554, citing *Wood v. Orange County,* 715 F.2d 1543, 1546–47 (11th Cir.), *reh'g denied,* 720 F.2d 1294 (11th Cir.1983), *cert. denied,* 467 U.S. 1210, 104 S.Ct. 2398, 81 L.Ed.2d 355 (1984). Significantly, both preemption and injunctive relief claims have been found to be subject to dismissal under the doctrine.[26]

The Ninth Circuit, whose decisions bind this Court, has held that the doctrine applies to judgments which are not yet deemed to be "final". In *Worldwide Church of God v. McNair,* 805 F.2d 888 (9th Cir. 1986), plaintiffs challenged a state court jury verdict for defamation pursuant to a federal action predicated upon 42 U.S.C. § 1983. The plaintiffs alleged that the verdict was unconstitutional. The district court dismissed the action. On appeal, the appellate court held that district court lacked jurisdiction to hear the matter and affirmed the dismissal:

> The district court could not evaluate the plaintiffs' constitutional claims without conducting a review of the state court's legal determinations and the jury's verdict. [Footnote 3: "We agree with the Second and Fifth Circuits that the Feldman doctrine should apply to state judgments even though state court appeals are not final. *See Hale v. Harney,* 786 F.2d 688, 691 (5th Cir.1986) ("We hold no warrant to review even final judgments of state courts, let alone those which may never take final effect because they remain subject to revision in the state appellate system."); [*Texaco v.*] *Pennzoil* [*Co.,* 784 F.2d 1133, [1142–43] (2nd Cir.1986), *prob. juris. noted,* 477 U.S. 903, 106 S.Ct. 3270, 91 L.Ed.2d 561 (1986), *rev'd,* 481 U.S. 1, 107 S.Ct. 1519, 95

---

26. *Weiner,* 868 F.2d at 1555:

[The plaintiff's] preemption claim would require the district court to decide whether ERISA preempted the [defendant's] tort claims. The district court would not merely decide the general issue of whether ERISA preempts all state tort claims. Rather, the district court would have to determine whether ERISA preempts the tort claims in this case by determining whether ERISA govern's the [de-

fendant's] insurance plans.... Thus, the district court would necessarily review these essential components of the ... trial court's judgment. Such review exemplifies the zone of appellate review from which federal district courts are forbidden.... Both the Supreme Court and this court have dismissed injunctive relief claims under the Rooker–Feldman doctrine.

L.Ed.2d 1 (1987) ] (arguing that any other rule would encourage forum shopping and provoke antagonism between state and federal courts). *McNair*, 805 F.2d at 892. Similarly, in *Dubinka v. Judges of the Superior Court of the State of California for the County of Los Angeles*, 23 F.3d 218 (9th Cir.1994), in which state court criminal defendants challenged the constitutionality of California's Proposition 115, which required reciprocal discovery, the court cited to *Feldman* and its prior decision in *McNair* for the proposition that the doctrine applied "even when the state court judgment is not made by the highest state court ...". *Dubinka*, 23 F.3d at 220.[27]

 This Court notes that the claims presented to it in the instant proceeding, are identical to claims argued by Morrow before the Superior Court. This Court further notes that the issue of preemption pursuant to § 525, presented to the state court, is inextricably intertwined with the conclusions of the State Court Judgment. Indeed, the injunction requested in the instant proceeding contemplates enjoinment of the State Court Judgment which confirms the Cease and Desist Order. The entry of such an injunction and the findings necessary to support the requested declaratory judgment would be tantamount to a reversal of the state court—an impermissible appellate "review" by a federal trial court.

As such, this Court holds that it lacks subject matter jurisdiction pursuant to the Rooker–Feldman Doctrine to consider the claims presented in the instant adversary proceeding. In light of this holding, this Court need not reach issues of abstention, possible application of the Anti–Injunction Act, or the merits.

IT IS HEREBY ORDERED that the instant proceeding is DISMISSED for lack of subject matter jurisdiction; and

IT IS FURTHER ORDERED that the preliminary injunction entered by this Court in this proceeding is hereby vacated; and

IT IS FURTHER ORDERED that the Commissioner prepare and lodge a Judgment consistent with this Opinion.

---

27. *Cf. Resolution Trust Corporation v. Bayside Developers*, 43 F.3d 1230, 1237 n. 5 (9th Cir. 1994), indicating, in *dicta:*

> In arguing that the federal district court had no appellate jurisdiction, Bayside relies on the Rooker/Feldman line of cases which hold that federal district courts lack jurisdiction to review final state court judgments.... [Citations to *Rooker* and *Feldman* omitted] ...

However, these cases may be distinguished from this case because they addressed final state court judgments defined as "rendered by the highest court of a state in which a decision could be had." 28 U.S.C.A. 1257(a); ... The California Court of Appeal decision was not final and was not a decision of the highest state court.