**In Re Curtis Wayne APPLEGATE, Debtor.**

**Curtis Wayne APPLEGATE, Plaintiff,**

v.

**John O. MARCH, Secretary of the Army, Defendant.**

**Bankruptcy No. 86–00293–NN.**
**Adv. No. 86–0115–NN.**

United States Bankruptcy Court,
E.D. Virginia,
Newport News Division.

Sept. 8, 1986.

John E. Robins, Jr., Hampton, Va., for plaintiff.

Michael O. Rhine, Asst. U.S. Atty., Norfolk, Va., for defendants.

## ORDER OF RESOLUTION

### MEMORANDUM OPINION

HAL J. BONNEY, JR., Bankruptcy Judge.

Which rises higher, the Bankruptcy Code or the national security? Not really, but we decide it anyway.

Curtis Wayne Applegate is a twelve year veteran of the U.S. Army with the rank of Sergeant and a 'top-secret' security clearance for his instruction of maintenance and repair of the *Blackhawk* helicopters. He is currently stationed at Fort Eustis in this venue.

By May of this year he anticipated transfer to the Supreme Headquarters of Allied Powers in Europe [SHAPE], in Belgium, the anticipation being pregnant since August, 1985. Ah, but financial difficulties developed, he married and desired to go to the Low Country sans financial woes; therefore, he filed for bankruptcy under the provisions of Chapter 7 of the Bankruptcy Code on April 24, 1986.

Applegate thought he should advise someone in the firm that he had "taken the bath," so on May 19th he stopped by the Fort Eustis personnel office and informed a Specialist. According to Captain Lois Elaine Farris, the Specialist considered the filing of bankruptcy as "financial irresponsibility" and Applegate's orders to cross the pond were revoked.

He now comes to this great haven of one's civil rights, the U.S. Bankruptcy Court, for redress. Laugh not. No court in the realm holds such a wide subject matter jurisdiction as does the Bankruptcy Court. He cites, appropriately, 11 U.S.C. § 525(a), Protection Against Discriminatory Treatment, in part:

" ... a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or oth-

er similar grant to, condition such a grant to, discriminate with respect to such a grant against, deny employment to, terminate the employment of, or discriminate with respect to employment against, a person that is or has been a debtor under this title...."

The entirety of § 525, every word, is utterly sweeping. There was no parallel under the Act ... and it all grew from a driver's license discrimination case. It is indeed a far cry from the cases of *Kesler v. Department of Public Safety*, 369 U.S. 153, 82 S.Ct. 807, 7 L.Ed.2d 641 (1962); and *Reitz v. Mealey*, 314 U.S. 33, 62 S.Ct. 24, 86 L.Ed.21 (1941), permitting governmental discrimination against bankrupts, to *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971), and its codification in § 525.

■ While we are not about to extend § 525 to the national security, the secret is out before the final reel, the Congressional intent is, nonetheless, quite positive and broad. For example, the enumerations are not exhaustive. See House Report No. 95–595, 95th Cong., 1st Sess. 366–7 (1977); Senate Report No. 95–989, 95th Cong., 2d Sess. 81 (1978), U.S.Code Cong. & Admin. News 1978, 5787.

Captain Farris testified, and it is not factually disputed, that although the Specialist did, in effect, bring the transfer to Belgium to a military halt, by the time halt was replaced by march on June 13th, Sgt. Applegate's specialty was no longer needed at SHAPE. It unfolds that Capt. Farris' personnel office, after the Specialist's action, obviously a rank higher than Captain, fed the bankruptcy information to the Army's Special Actions Branch in the Department of the Army at the Pentagon which returned word that the Sergeant should not be prevented from going and might do so in October of 1986. Later, the Special Deletions Branch, D.O.A., advised the specialty was no longer needed.

Arriving at this point, we must then conclude there was no discrimination. It is a factual conclusion, even if the fullest reign is given to § 525, that, simply, Applegate was not needed in NATO's nest.

But we will not be denied the opportunity to speak on bankruptcy law versus the national security. That is what the lawyers were itching for the Court to do and, indeed, this may be the first reported case on the subject. Therefore, the case becomes one small on resolution but big on dictum.

■ It would appear to us that the government could, lawfully, deny one a transfer to a sensitive position, as SHAPE is, solely on the grounds he or she had filed a bankruptcy *grounded in irresponsibility*.[1] There shall be no discrimination otherwise, no reduction in rank, pay or benefits or any other action that would affect one's military career.

Absent a specific statute or case law—and there are none—it becomes a matter of reasoning. Ours may not always be logical, but it is patriotic in the highest sense of that word.

Routinely, the cases touching upon § 525 fall in five categories:

(1) Licenses

*Matter of Holder*, 40 B.R. 847, 11 B.C.D. 1347 (E.D.Mo.1984).

(2) Student Transcripts

*Johnson v. Edinboro State College*, 728 F.2d 163; 11 B.C.D. 915 (3d Cir. 1984).

(3) The Public Good

*In re Webb*, 38 B.R. 541 (E.D.Pa.1984).

(4) Contract Bidding

*Matter of SonShine Grading, Inc.*, 27 B.R. 693, 10 B.C.D. 349 (E.D.N.C.1983).

(5) Employment

*In re Barbee*, 14 B.R. 733, 8 B.C.D. 283 (E.D.Va.1981).

The national security, while incident to employment, is another matter. Not even the Act of August 26, 1950, giving to the heads of certain departments and agencies summary suspension and unreviewable dismissal powers over their civilian employees

---

**1.** The Court made no finding at all in this instance.

when deemed necessary "in the interest of the national security of the United States," defines "natural security." The courts, however, have defined its purpose and defined it well.

> "Concerned with the protection of the Nation from internal subversion or foreign aggression."

> "Concerned with the national defense and [those] which have custody over information the compromise of which might endanger the country's security."

> Cole v. Young 351 U.S. 536, 76 S.Ct. 861, 100 L.Ed. 1396 (1956)[2]

> "Defending those values and ideals which set this Nation apart."

> United States v. Robel, 389 U.S. 258 88 S.Ct. 419, 19 L.Ed.2d 508 (1967)

> "To protect secrecy of government's foreign intelligence operations."

> "To prevent serious damage to the national security."

> Haig v. Agee, 453 U.S. 280, 101 S.Ct. 2766, 69 L.Ed.2d 640 (1981)

■ These but illustrate, legally, the vitality and high standing of the national security. The national security does not surge higher than one's constitutional rights, except, in part, in time of war; nevertheless, the national security must rise higher than a particular employment assignment where there is reasonable cause to believe the national security *could be*, not will be, compromised.

One's financial needs weigh upon it. Such needs provide great motivation in nearly every life. Few there be who take a vow of poverty. Most vow to get all they can. Yea, for a farthing some would sell their souls. For lucre, men will steal, rob, plot, plunder, murder ... and sell their country. Not all will, but we don't know which ones will.

In the recent unfolding of the Walker spy case, the motive was apparently not philosophy, but money. Enough said. The armed forces must be cautious and Sgt. Applegate is by no means the sole recipient of this scrutiny.[3] One in financial straits, like one who is a homosexual, is a candidate for compromise the courts have found. *Harmon v. Brucker*, 243 F.2d 613 (CA, D.C.1957); *Finley v. Hampton*, 473 F.2d 180 (CA, D.C.1972); *McKeand v. Laird*, 490 F.2d 1262 (9th Cir.1973); *Hoska v. Dept. of the Army*, 677 F.2d 131 (CA, D.C. 1982).

Financial problems, of irresponsibility or not, are a cause for concern where the national security is involved.

■ Now, the Court has found no discrimination against Sgt. Applegate. The position at SHAPE is no longer available. He has no cause for complaint here. Clearly, though, the Army shall not, by authority of 11 U.S.C. §§ 525 and 105, discriminate against him in such areas as career, pay, benefits, opportunity, etc.

IT IS SO ORDERED.

It is FURTHER ORDERED that a copy of this Order be forwarded to John E. Robins, Jr., Esquire, Attorney for the plaintiff, P.O. Box 248, Hampton, Virginia 23669; Michael O. Rhine, Esquire, Attorney for the defendant, Office of the United States Attorney, 600 Granby Street, Norfolk, Virginia; Debera Frick Conlon, Esquire, Office of the U.S. Trustee, Room 744 Federal Building, 200 Granby Mall, Norfolk, Virginia; and to Curtis Wayne Applegate, debtor.

---

**2.** Other than for a definition, the *Cole* case can be cited as good authority for this Court's reasoning on the dictum issue.

**3.** Sgt. Applegate's loyalty is in no wise in question here. Indeed, he is a loyal soldier with high security clearance. At the conclusion of the hearing the Court directed the Army to counsel with the Sergeant as not only would it be fair to him to treat him right but in the interest of the Army to retain skilled men in the service. A mutual benefit exists.