**In re FEATURE HOMES, INC., a California Corporation, Debtor–in–Possession.**

**Bankruptcy No. 290–00097–B–11. Motion No. HSM–2.**

United States Bankruptcy Court, E.D. California, Sacramento Division.

July 18, 1990.

**732**

Delbert W. Oros, Hefner, Stark & Marois, Sacramento, Cal., for debtor-in-possession Feature Homes, Inc.

Robert F. Tyler, Supervising Deputy Atty. Gen., John K. Van de Kamp, Atty. Gen., Sacramento, Cal., for California Franchise Tax Bd.

Judith C. Hotze, Office of U.S. Trustee, Sacramento, Cal.

## OF DEBTOR'S MOTION FOR ORDER REVIVING DEBTOR CORPORATION

DAVID E. RUSSELL, Bankruptcy Judge.

### MEMORANDUM OF DECISION

Feature Homes, Inc. (hereinafter "Debtor") seeks by and through the above-entitled motion to compel the State of California to revive the Debtor's corporate privileges which were suspended prior to the filing of bankruptcy for failure to pay California franchise taxes. For the following reasons the court will deny the requested relief.

### i] *Factual Background*

A brief summary of the facts surrounding the motion is in order. Debtor is a contractor duly organized and incorporated under the laws of the State of California.[1] Debtor owns but has contracted to sell its 100 percent interest in the common stock of Rumford Property and Liability Insurance

Company (hereinafter "Rumford") under a Stock Sale Agreement dated December 11, 1989.[2] Debtor contends that as consideration for the transfer of stock, it will receive assets and cash in the approximate value of $3,000,000.00 which it contemplates using to fuel a plan of reorganization. (Declaration of Russell V. Lugli (President of Feature Homes) in Support of Motion to Assume Contract, filed 1/24/90, at pp. 1–2, ¶ 3).

On or about January 2, 1990, the California Franchise Tax Board issued a Notice of Suspension or Forfeiture due to the Debtor's failure to pay taxes and/or for failure to file required tax returns. (Ex. "A" to Motion for Order Reviving Corporation, filed 1/26/90). Debtor filed its voluntary Chapter 11 petition on January 5, 1990, sought and successfully obtained authorization from this court to assume the Stock Sale Agreement on January 24, 1990 (Motion HSM–1)[3], and moved for an order compelling the State to issue a certificate of revival on January 26, 1990 (HSM–2) contending that such an order was a critical prerequisite to a successful reorganization.

### ii] *Discussion*

Sections 23301 and 23301.5 of the California Revenue and Taxation Code ("Rev.C.") permit the State to suspend a corporation's powers, rights and privileges for the failure to pay taxes or file required tax returns. The effect of the forfeiture under these statutes is to render all contracts entered into by the suspended corporation "voidable" and, further, strips that corporation of standing to initiate, defend against, or appeal any state court actions by or against it. (*See, generally,* 9 Witkin, *Summary of California Law* (9th Ed. 1989), §§ 225–227). A suspended corporation may be revived by the State either

---

1. Debtor's schedules reveal that its home building operation terminated in March of 1987. (Statement of Financial Affairs, filed 1/23/90, at ¶ 1(b)). Judging from its Schedule of Current Income and Current Expenditures ($2,500/month income [primarily stock dividends and interest] and $400/month in expenses [rent and utilities]) the Debtor is no longer actively engaged in any ongoing business.

2. The court takes judicial notice of its "Order Authorizing Debtor to Assume Executory Contract", filed March 14, 1990, the Stock Sale Agreement attached thereto as Exhibit "A", and the Declarations in Support of said motion (filed 1/24/90).

3. An order to that effect was issued by this court on March 14, 1990.

upon the payment of all delinquencies (Rev.C. § 23305) or upon a determination that "the revivor will improve the prospects for collection of the full amount due". (Rev.C. § 23305b).

■ The Franchise Tax Board ("FTB") asserts the threshold contention that the suspension of Debtor's powers pursuant to the referenced Revenue and Tax Code provisions strips the Debtor of standing to file bankruptcy. It is clear that such an interpretation would impermissibly turn the priority scheme underlying the Bankruptcy Code on its head by allowing states to expressly condition an entity's right to file a petition in bankruptcy upon the satisfaction of their prepetition claims. Such a result was obviously not contemplated or intended by Congress. In any event, the subject Revenue and Tax Code forfeiture statutes purport only to revoke the corporate entity's right to enter into enforceable contracts and to protect itself in state court and do not address nor purport to affect that entity's right to file for protection under the Federal Bankruptcy Code. Consequently, the FTB's jurisdictional objection will be overruled.

■ Debtor contends, *inter alia*, that the State's refusal to issue a certificate of revivor absent the payment of delinquent taxes is the functional equivalent of an "act to collect, ... or recover a claim against the debtor that arose before the commencement of the case under ... title [11]" thus constituting a violation of the automatic stay. (11 U.S.C. § 362(a)(6)). This court disagrees.

There is no reason why the court should construe the State's conduct as constituting an affirmative action violative of the Code's stay provisions. The suspension occurred prepetition at a time when the automatic stay was clearly not in effect. Further, the refusal of the State to grant the revivor, in addition to being based upon ostensibly reasonable grounds, has little or no tangible impact upon this particular Debtor.[4] Specifically, the Debtor has apparently not engaged in any contracting work for over three years and has made no offer of proof that it in fact intends to pursue this occupation through a subsequent plan of reorganization. Hence, any benefits which would accrue from a certificate of revivor are purely speculative.

In any event, any contracts which the Debtor might subsequently attempt to enter into or any lawsuits brought by or against it prior to confirmation will, in all probability, be subject to the exclusive jurisdiction of this court rather than that of the state courts. Consequently, the suspension of the Debtor's corporate state law rights and privileges are, at least at this early stage of the reorganization, inconsequential and the court sees no need to grant the extraordinary relief requested at this time.[5]

■ Finally, as indicated above, there is no reason to believe that the FTB has any affirmative obligation at this point to issue or has otherwise predicated its unwillingness to issue a certificate of revivor upon the fact that the Debtor has filed bankrupt-

4. Debtor scheduled the amount of taxes owed to the Franchise Tax Board in the amount of $300,-000.00. However, although substantial real property assets shall be transferred to the Debtor in consideration for the sale of stock, a mere $100,000.00 in cash and a $100,000.00 promissory note will constitute the balance of consideration. Consequently, the sale of the stock will not necessarily improve the prospects of repaying the Tax Board in full. Of greater importance, however, is the fact that the issuance of a certificate of revivor is completely unrelated and irrelevant to successful closing of the Stock Sale Agreement. That is, there is no condition precedent to the Sale Agreement which requires that the *Debtor* be in good standing with the state of California. Indeed, the Stock Sale Agreement was entered into prior to the notice

of suspension and thus is not voidable and, even if it were, is now under the jurisdiction of this court which has expressly approved the provisions therein. Consequently, there appears to be no reason why the sale of the Rumford stock should trigger a duty on behalf of the State to revive the Debtor.

5. Of course, it may be that the Debtor will require a certificate of revivor in the event that it chooses to reactivate its contracting business under a confirmed plan of reorganization. In the event the State refuses to voluntarily issue such a certificate following confirmation of the plan by this court, the issue will no doubt be ripe for reconsideration.

cy. Consequently, Debtor's contention that the FTB is in violation of 11 U.S.C. § 525(a) [Protection against discriminatory treatment] will be overruled.

## DISPOSITION

For the foregoing reasons, the court will deny Debtor's motion to compel the Franchise Tax Board to issue a certificate of revivor. The State shall forthwith prepare and submit a proposed order in conformance herewith.