**In Re BETTY OWEN SCHOOLS, INC., Debtor.**

**BETTY OWEN SCHOOLS, INC., Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF EDUCATION, Defendant.**

**Bankruptcy No. 95–B–40053(CB).**
**Adv. No. 95–8089A.**

United States Bankruptcy Court, S.D. New York.

April 24, 1996.

Backenroth & Grossman, L.L.P. by Mark Frankel, New York City, for Debtor, Betty Owen Schools, Inc.

Winston & Strawn by Howard Seife, Andrew Hahn, New York City, for BO Acquisition Corp. d/b/a The Betty Owen Schools, Ltd.

Mary Jo White, United States Attorney for the Southern District of New York by Martin J. Siegal, New York City, for the United States Department of Education.

### MEMORANDUM DECISION OF SECTION 525 OF TITLE 11 OF THE UNITED STATES CODE

CORNELIUS BLACKSHEAR, Bankruptcy Judge.

There are two matters before this Court. One is a motion for summary judgment by

Betty Owen Schools, Inc. (the "Debtor") seeking a declaration that the United States Department of Education (the "Department") violated Section 525(a) of Title 11 of the United States Code (the "Bankruptcy Code") by revoking the Debtor's right to participate in financial aid programs under Title IV of the Higher Education Act, 20 U.S.C. § 1001 *et seq.* (hereinafter "HEA"). The Department has made a cross motion for summary judgment. The other matter is a joint motion by the Debtor and the purchaser of the Debtor's assets, BO Acquisition Corp. b/d/a The Betty Owen Schools, Ltd. (the "Purchaser") for an order, *inter alia:* (1) enforcing an order of this Court, dated June 8, 1995 approving the sale of the Debtor's asset (the "Sale Order"); and (2) enjoining the Department from: (i) applying the "bankrupt" status of the Debtor; and (ii) denying certification to the Purchaser to participate in HEA programs.

### BACKGROUND

The Debtor is in the business of providing adult or vocational education. At one point, it had an enrollment of approximately four hundred and sixty-six students, most of whom received loans guaranteed by the Department under HEA. On January 5, 1995, the Debtor filed a petition under Chapter 11 of the Bankruptcy Code. It operated briefly as Debtor–In–Possession until June 1995, when it sold its assets to the Purchaser, pursuant to section 363 of the Bankruptcy Code.

On or about January 20, 1995, the Department took "emergency action" pursuant to 20 U.S.C. § 1094(c)(1)(G) by informing the Debtor that it was no longer eligible to participate in HEA programs as such participation was prohibited by 20 U.S.C. § 1088(a)(4), which states, in relevant part, that an "institution [that] has filed for bank-

ruptcy" is excluded from the definition of "[a]n institution of higher education." Because only "[a]n institution of higher education" is eligible to participate in HEA loan programs, the Department concluded that a debtor institution is, thus, ineligible.

The Department initially informed the Debtor that its currently enrolled new students would no longer be eligible for student loans. It also froze the Debtor's escrow account, refusing to disburse funds for classes already taught. ^In response, the Debtor commenced this instant adversary proceeding to compel the Department to reinstate the Debtor's eligibility.

On or about February 7, 1995, the Department and the Debtor reached an agreement to allow the Debtor to disburse loan funds to students who were already enrolled and had received HEA loans pre-petition. Pursuant to the settlement, $116,847 was disbursed.

In June 1995, the Debtor moved to sell substantially all of the Debtor's assets to the Purchaser—free and clear of all liens and encumbrances—pursuant to sections 363(b) and 363(f) of the Bankruptcy Code.[1] The Government objected to the sale.[2] A hearing was held before this Court on June 7, 1995, and the sale of the Debtor's assets to the Purchaser was approved. In the Sale Order, the Court found that the Purchaser was acting in "good faith" and entitled to the protection set forth in section 363(m) of the Bankruptcy Code.

On or about September 13, 1995, the Purchaser filed its application for re-certification with the Department pursuant to 20 U.S.C. § 1099c(i)(1) and 34 C.F.R. § 600.31(a)(2), which permits an institution that has changed ownership to re-establish eligibility,

---

**1.** As part of the terms of the sale, the Purchaser assumed the following liabilities: (1) $60,000 relating to refunds due its students from its Queens location; (2) $150,000 in payroll liabilities for those employees continuing employment with the Purchaser; (3) $25,000 of audited liabilities due the "Tuition Assistance Program" ("TAP"); (4) $45,000 in contingent liabilities related to unaudited refunds to TAP, students, etc. ...; and (5) $850 to an accrediting body.

**2.** The Purchaser initially contended that the Department objected to the sale but in the Department's response, it clarified that it was the Internal Revenue Service, and not the Department, that had objected to the sale based on its claim against the Debtor.

thereby waiving the statutory two-year waiting period.[3]

On or about December 8, 1995, the Debtor filed a motion for default judgment or, in the alternative, moved for summary judgment to compel the Department to reinstate eligibility.[4] A hearing was held before this Court on February 2, 1996, wherein this Court disposed of all the other issues and ruled that the real issue to be decided is whether the Department violated section 525 of the Bankruptcy Code.[5] On or about February 23, 1996, the Department cross-moved for summary judgment.[6]

Coincidentally, on the same day—February 23, 1996—in a letter to the Purchaser, the Department denied the Purchaser's application for eligibility to participate in HEA programs.

On or about March 13, 1996, the Purchaser moved this Court for an Order to Show Cause to permit the Purchaser to intervene in the instant adversary proceeding and pre-vent the Department from denying the Purchaser's application.[7] On that day, a hearing was held before this Court and, on the record, the Purchaser was granted its motion to intervene. The Court determined that an expedited hearing was not necessary and that it would rule on the merits of the Purchaser's claims *sub judice*. The Court allowed the parties to file additional memorandum of law to further support their position.

The Department, in its response—via the affidavit of Steven Z. Finley, an attorney in the office of the General Counsel of the Department—clarified its rationale for denying the Purchaser's application to participate in HEA Programs. According to the Department, its eligibility was denied pursuant to 20 U.S.C. § 1099c(i)(1) and 34 C.F.R. § 600.31 because the Department interpreted the relevant statute and regulation as only applicable to changes in ownership of eligible institutions. Since the Debtor was not an "eligible institution" at the time of the sale, the Pur-

---

3. Section 1099c(i) provides that:
   [A]n eligible institution of higher education that has had a change in ownership resulting in a change of control shall not qualify to participate in programs under this subchapter and part C of subchapter I of chapter 34 of Title 42 after the change in control (except as provided in paragraph (3)) unless it establishes that it meets the requirements of section 1088 of this title (other than the requirements in subsections (b)(5) and (c)(3)) and this section after such change in control. 20 U.S.C. § 1099c(i)(1).
   The regulations implementing this section, 34 C.F.R. § 600.31, provides:
   (a) General. (1) An institution that undergoes a change in ownership that results in a change of control ceases to qualify as an eligible institution upon the change in ownership and control ...
   (2) In order to reestablish eligibility and to resume participation in the title IV, HEA programs, the institution must demonstrate to the Secretary that after the change in ownership and control—
   (i) The institution satisfies all the applicable requirements contained in §§ 600.4, 600.5, and 600.6, except that if the institution is a proprietary institution of higher education or post secondary vocational institution, it need not have been in existence for two years before seeking eligibility ...
   34 C.F.R. § 600.31.

4. As mentioned earlier, the Debtor had sold its assets and the Purchaser had already applied to participate in HEA loan programs in its own

right. Thus, the relevant time period at issue for the purposes of the Debtor's motion is from the time of the Department's revocation of its ability to participate in HEA loan programs post-petition until the sale of its assets.
   This Court initially believed the issue moot because both parties had reached a settlement and that the assets of the Debtor had been sold. At the February 2, 1996 hearing, the plaintiff informed this Court that the Purchaser had also purchased the rights to any recovery under this adversary proceeding.

5. At the hearing, this Court ruled that the eligibility of the Debtor to participate in HEA programs was not part of the Debtor's estate pursuant to section 541(b)(1) of the Bankruptcy Code and that the Department did not violate the automatic stay pursuant to section 362(b)(16).

6. At the February 2, 1996 hearing, this Court permitted the Department to make its motion for summary judgment.

7. This Court notes that as part of the Purchaser's original request for relief, it sought to "preliminarily enjoin" the Department from applying the "bankrupt" status of the Debtor to itself. However, this Court was at a loss as to how an injunction could be sought to prevent an event that has already occurred—the Department has already made its determination and has already conveyed its decision to the Purchaser. For this reason, this Court did not entertain the Purchaser's motion for a preliminary injunction.

chaser is ineligible to apply under the change of ownership laws.[8]  However, in its February letter, the Department advised the Purchaser that it would be eligible to apply in its own right as a new applicant which would entail a waiting period of two (2) years.  The Department indicated, in its letter, that it would be willing to consider the Purchaser's application commencing from the date of the Debtor's filing. of its petition, or January 1995.  Thus, the Purchaser would be eligible to apply in its own capacity in approximately nine months.

The Purchaser contends that the Department's interpretation of the statutes is erroneous and that it had relied upon assurances by Mr. Finley that it was eligible under the change in ownership regulations.[9]

## DISCUSSION

### I.  Subject Matter Jurisdiction

█ As an initial matter, this Court must decide if it has jurisdiction to hear the two motions.  First, the jurisdictional issue raised by the Department as to the Debtor's motion will be addressed.[10]  The Department asserts that this Court is without jurisdiction to review its decision pertaining to participation eligibility in HEA programs because a debtor's eligibility to participate in HEA programs does not fall within "property of the debtor's estate."  It is the Department's position that bankruptcy jurisdiction extends no further than property of the estate.[11] Section 541(b)(3) of the Bankruptcy Code, as amended by Congress—in the Student Loan Default Prevention Initiative Act, as contained in the Omnibus Budget Reconciliation Act of 1990—states, in relevant part, that:

(b) property of the estate does not include—(3) any eligibility of the debtor to participate in programs authorized under [HEA] ... Or any accreditation status of state licensure of the debtor as an educational institution. . . .

11 U.S.C. § 541(b)(3).

█ It is black letter law that jurisdiction of the bankruptcy courts, like that of other federal courts, is grounded in and limited by statute.  Clearly, bankruptcy courts have jurisdiction over property of the debtor's estate pursuant to 28 U.S.C. § 157(b)(2).  However, it does not follow that the bankruptcy courts' jurisdiction is only limited to property of the estate.  Title 28 U.S.C. § 1334(b) provides that the district courts have original jurisdiction over all "civil proceedings arising under title 11, or arising in or related to a case under title 11."  In turn, pursuant to 28 U.S.C. § 157(a), the district courts may refer "any or all proceedings arising under title 11 or arising in or related to a case under title 11. . . ."  See also, Celotex Corp. v. Edwards, — U.S. —, —, 115 S.Ct. 1493, 1498, 131 L.Ed.2d 403 (1995).  The "related to" jurisdiction is very broad; in fact, the Supreme Court has enunciated that:

the "related to" language of § 1334(b) must be read to give ... bankruptcy courts ... jurisdiction over more than simple proceedings involving the property of the debtor or the estate.

Id. at —, 115 S.Ct. at 1500.

█ In the Second Circuit, a matter is "related to" a bankruptcy case if its outcome might have any "conceivable effect" on the estate.  In re Publicker Indus., Inc. v. United States (In re Cuyahoga Equip. Corp.), 980

---

**8.** The Department admits that the Purchaser's application raised an issue of first impression as to how section 1088(a) effects section 1099c(i)(1) of the HEA.

**9.** Pursuant to Mr. Finley's affidavit, he denied giving such assurances but asserts that he merely gave a "preliminary" analysis.  Affidavit at 2–3 ¶¶ 3, 4.

**10.** The Department did not raise the jurisdictional issue in its cross-motion for summary. judg-

ment.  Nevertheless, this Court will address this matter as it is of paramount importance.

**11.** The Department cites In re Challenge Air International, Inc., 952 F.2d 384, 387 (11th Cir. 1992), Pension Guaranty Corp. v. Braniff Airways, Inc., 700 F.2d 935, 942 (5th Cir.1983), Weng v. Farb (In re K & L Ltd.), 741 F.2d 1023, 1029 (7th Cir.1984), In re Ace Industries, Inc., 65 B.R. 199, 200 (Bankr.W.D.Mich.1981).  However, these cases are inapposite—none deals with a bankruptcy court's jurisdiction pertaining to section 525 of the Bankruptcy Code.

F.2d 110, 114 (2d Cir.1992). Obviously, this adversary will have an impact on the Debtor's estate. Should the Debtor prevail against the Department, more money will be made available to the Debtor's creditors. Thus, at the very minimum, this Court has "related to" jurisdiction. It is not necessary to distinguish between proceedings "arising under" or "related to" a case under Title 11. This Court need only determine that a matter is at least "related to" bankruptcy. *In re New York International Hostel, Inc.,* 157 B.R. 748, 751 (S.D.N.Y.1993); and *In re County Schools, Inc.* 163 B.R. 424 (Bankr. D.Conn.1994) (citations omitted).

■ Moreover, the specific jurisdictional grant in section 525 is very immense. *Bradley v. Barnes (In re Bradley),* 989 F.2d 802, 804 (5th Cir.1993) ("No court in the realm holds such a wide subject matter jurisdiction as does the Bankruptcy Court ... the entirety of § 525, every word, is utterly sweeping"—citing *Applegate v. March,* 64 B.R. 448, 450 (Bankr.E.D.Va.1986)). Section 525 is the anti-discrimination provision of the Bankruptcy Code. It prohibits discrimination on the basis of a filing of the bankruptcy petition. If there is a potential violation of § 525, then the bankruptcy court must take jurisdiction. *Id.* at 804. Such is the situation here.

Indeed, courts have generally held that proceedings brought by debtors or former debtors alleging violations of section 525 are core proceedings. *See, e.g., Bradley v. Barnes (In re Barnes),* 989 F.2d 802, 804 (5th Cir.1993); *Morrow v. Torrance Bank (In re Morrow),* 189 B.R. 793, 796 (Bankr. C.D.Cal.1995); and *Jacobs v. State of Oklahoma (In re Jacobs),* 149 B.R. 983, 989 (Bankr.N.D.Okl.1988). Consequently, this Court holds that it has jurisdiction to decide the Debtor's motion and the Department's cross-motion.

It is, however, another matter to automatically extend this Court's jurisdiction to decide the Purchaser's motion. At the March 13, 1996, hearing, this Court raised this issue *sua sponte.*[12]

■ The Purchaser asserts standing as an entity "associated" with the Debtor. Section 525(a) prohibits the government from discriminating against a debtor "or another person with whom such ... debtor has been associated...." 11 U.S.C. § 525(a). Since the Department has inextricably linked the Purchaser's application process to the Debtor's bankruptcy filing, this Court finds that the Purchaser does indeed have "associated" status.[13] However, the mere "associated" status does not automatically confer jurisdiction.

In a case with similar facts, the court, in *In re County Schools,* 163 B.R. 424, 430 (Bankr. D.Conn.1994), held that it did not have jurisdiction. There, the non-debtors were former owners and officers of a Chapter 7 debtor— that, prior to the conversion of its chapter 11 case, had operated as a vocational school. The non-debtors commenced an adversary proceeding and sought, pursuant to section 525, to enjoin the Department from excluding them from participating in HEA programs because they were allegedly not "responsible." However, the Department did not take any action against the debtor. *Id.* at 425. Accordingly, the court held that it lacked jurisdiction because there was no nexus between the plaintiffs' injuries and the debtor's estate in the chapter seven case. *Id.* at 429–430.

■ The fact that the Purchaser's cause of action is based upon a section of the Bankruptcy Code is not determinative of jurisdiction. As so aptly summarized by the court in *County Schools,* "[a]lthough the filing of [the] bankruptcy case was a condition precedent to the plaintiff's cause of action, that circumstance does not alone provide the requisite

---

**12.** *See, County Schools, Inc. v. United States Department of Education (In re County Schools),* 163 B.R. 424, 426 (Bankr.D.Conn.1994) (a court may raise jurisdiction issues *sua sponte* ); *Trager v. Internal Revenue Service (In re North Star Contracting Corp.),* 146 B.R. 514, 518 (Bankr. S.D.N.Y.1992) (same); Rule 7012 Fed.R.Bankr. P.; and Rule 12(h)(3) Fed.R.Civ.P.

**13.** The irony of the Purchaser's position is not lost on this Court. On one hand, the Purchaser argues that it is "associated" with the Debtor, but on the other hand, it asserts that the Department should treat it as a separate and distinct entity from the Debtor.

nexus between the case and the proceeding to make the proceeding core." *Id.* at 430 (citations omitted). Similarly, if the plaintiffs were to prevail against the Department, it will have no impact whatsoever upon the debtor or the creditors.

The Purchaser argues that this case is distinguishable from *County Schools* for two main reasons. First, the Debtor is in a Chapter 11 proceeding. Second, the Purchaser assumed various liabilities of the Debtor which will remain unpaid if it is unable to qualify for HEA programs. If such debts are unpaid, then the Debtor will remain liable and consequently, there will be an impact on the Debtor's rights and liabilities. For this proposition, the Purchaser cites to *In re Dogpatch U.S.A., Inc.*, 810 F.2d 782, 786 (8th Cir.1987). The court in *Dogpatch* affirmed the bankruptcy court's holding that it had jurisdiction over a claim against a purchaser of assets which the debtor remained contingently liable in the event of the purchaser's default. *Id.* at 786.

While it is true that the Debtor is in a Chapter 11 proceeding, it is not so clear that this case is not a liquidating Chapter 11, and hence, more akin to a chapter seven filing. After all, the Debtor has already sold its assets to the Purchaser pursuant to section 363 of the Bankruptcy Code. The Debtor has ceased all operations. This Court is not aware of any future plan to commence any type of business. Moreover, the Purchaser is not infusing money into the Debtor for its reorganization—it is merely the buyer of the Debtor's assets. Granted, the Purchaser did assume certain liabilities but it is far from clear that if such liabilities remained unsatisfied, the Debtor, and not the Purchaser, would remain liable. Nothing in the documentation provides for a reversion of liabilities to the Debtor. In contrast, the debtor in *Dogpatch* remained liable pursuant to the specific terms of the contract. *Id.*

Thus, this Court is not convinced that such a "nexus" would even arise to the level of the Second Circuit's liberal standard for "related to" jurisdiction. In this Court's opinion, the case is analogous to *County Schools.*

■ However, because this Court has determined that it has jurisdiction over the Debtor's motion, this Court will, by implication, exercise jurisdiction over the Purchaser's motion only to the limited extent that the Purchaser's eligibility is effected by the Debtor's motion. Indeed, this Court had granted the Purchaser's motion for intervention for this very reason.

■ Alternatively, the Purchaser asserts that this Court has jurisdiction to enforce or effectuate its Sale Order, citing *In re New York International Hostel, Inc.*, 157 B.R. 748, 751 (S.D.N.Y.1993) (citing *In re Lafayette Radio Elec. Corp.*, 761 F.2d 84, 92 (2d Cir.1985)); *In re Ross*, 64 B.R. 829, 834 (Bankr.S.D.N.Y.1986); and *In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261, 264 (3d Cir.1991). Here, the Purchaser seeks this Court's determination that it is a "good faith purchaser" within the meaning of the 363(m) of the Bankruptcy Code and that the contract entered into by and between the Debtor and Purchaser was negotiated in "good faith and at arm's length." Since the Purchaser has couched its cause of action on an order entered by this Court, for the *limited* purposes of interpretation of its own order, this Court finds that it has core jurisdiction over the Purchaser's motion. *In re New York Int'l Hostel, Inc.*, 157 B.R. at 751.

## II. *Motions for Summary Judgment*

■ Rule 56(c) of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding through Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides that summary judgment shall be granted if "the pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *See also, Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In deciding a motion for summary judgment, courts must first determine if there are any factual issues to be tried, while at the same time, resolve ambiguities and draw all reasonable inference against the

moving party. *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987); *National Union Fire Ins. Co. v. Turtur,* 892 F.2d 199 (2d Cir.1989). The burden is on the moving party to clearly establish the absence of a genuine issue as to any material fact. *Celotex,* 477 U.S. at 322, 323, 106 S.Ct. at 2552, 2553; *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

In the instant case, this Court concludes that summary judgment is appropriate as there are no genuine issues of material fact. The issue to be addressed is whether the Department violated section 525 of the Bankruptcy Code by withdrawing its authorization for the Debtor to enroll new students in HEA loan programs post-petition. The Department has admitted that it terminated the Debtor's eligibility to participate in HEA programs solely because the Debtor filed a petition in bankruptcy.

Similarly, this Court has also determined that the Purchaser's motion can be decided on the pleadings as the parties do not dispute the relevant facts.

█ Preliminarily, this Court notes that the Bankruptcy Code "does not change the business and regulatory environment in which the debtor operates. A debtor-in-possession under Chapter 11 is not pro tanto excused by virtue of its bankruptcy from complying with valid and enforceable ... regulation." *In re Draughon Training Institute, Inc.,* 119 B.R. 921, 923 (W.D.La.1990) (citing *In re Beker Industries Corp.,* 57 B.R. 611, 624 (Bankr.S.D.N.Y.1986)).

The Department maintains that its regulatory authority to revoke the Debtor's eligibility was soundly premised upon 20 U.S.C. § 1088(a)(4), which excludes an institution in bankruptcy from the definition of an "institution of higher education." Notwithstanding, the Debtor asserts that the Department violated section 525 of the Bankruptcy Code. Section 525(a) of the Bankruptcy Code states:

(a) Except as provided in [several statutes not relevant here], a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such grant to, discriminate with respect to such a grant against, deny employment to, terminate the employment of, or discriminate with respect to employment against, a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act [former 11 U.S.C. §§ 1 et seq.], or another person with whom such bankrupt or debtor has been associated solely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.

11 U.S.C. § 525(a).

█ Section 525(a) was enacted to prevent the government from frustrating the "fresh start" policy of the Code. *In re Goldrich,* 771 F.2d 28, 30 (2d Cir.1987); L. King, *Collier on Bankruptcy* ¶ 525.02 (15th Ed.). Congress enacted this statute, codifying the Supreme Court's seminal decision in *Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971). The Supreme Court in *Perez* held that a state may not suspend a debtor's driver license whose tort judgment—arising from a automobile collision—was discharged in bankruptcy. The Court held that the state statute conflicted with the "fresh start" policy of the Bankruptcy Act. *Id.* at 652, 91 S.Ct. at 1712–13.

█ On its face, the Department appears to have violated section 525 of the Bankruptcy Code. It has admitted that the sole reason for terminating the Debtor's eligibility to participate in HEA programs was the Debtor's bankruptcy filing. It has also admitted that it denied the Purchaser's application under the change of ownership laws because the Debtor had already been declared "ineligible" due to its "bankrupt" status.

In its defense, the Department asserts that Congress acted unequivocally to exclude schools which have filed bankruptcy from

participating in federal student loan and grant programs. As illustrative of its intent, Congress amended sections 541 and 362 of the Bankruptcy Code through the Student Loan Default Prevention Initiative Act of 1990, as contained within the Omnibus Reconciliation Act of 1990. "Property of the estate," as defined in section 541, was amended to exclude "[a]ny eligibility of the debtor to participate in programs authorized under [HEA]." 11 U.S.C. § 541(b)(1).[14] Similarly, pursuant to the same act, Congress determined that "any action . . . regarding the eligibility of the debtor to participate in programs under [HEA]" is exempted from the "automatic stay." 11 U.S.C. § 362(b)(16).

Two years subsequent to the aforementioned amendments to the Bankruptcy Code, Congress amended section 1088(a) of the HEA to exclude an "institution [that] has filed for bankruptcy" from the definition of "an institution of higher education." 20 U.S.C. § 1088(a)(4). The purpose of amending the HEA was to improve the public confidence in the student financial aid programs by raising the quality of eligible schools. S.Rep. No. 102–204, 102d Cong., 1st Sess. at 3, 44 (1991).[15] Specifically, to ensure that schools are financially strong, it was intended that institutions which filed for bankruptcy will automatically be ineligible to participate in HEA programs. H.Rep. 102–447, 102d Cong., 2nd Sess. at 73–74 (1992).[16] Therefore, it is clear from the legislative history that Congress intended to limit educational assistance resources from financially unsound institutions, including schools which have filed for bankruptcy.

However, the Debtor argues that they are still afforded the protection of section 525(a) of the Bankruptcy Code because Congress neglected to amend 525(a) to exclude the Department from its reach. In further support of this proposition, the Purchaser asserts that Congress had the opportunity to exclude the Department since it recently amended section 525 in 1994 to prohibit discrimination against an individual seeking guaranteed loans that has filed a bankruptcy petition. 11 U.S.C. § 525(c)(1). Thus, the Purchaser asserts that, Congress's failure to amend section 525 is indicative of its intent to bind the Department to section 525(a).

Preliminarily, it is this Court's observation that this is an issue of first impression as there are no other cases dealing with this irreconcilable inconsistency between section 525(a) of the Bankruptcy Code and section 1088(a)(4) of the HEA. Nor can this Court find a case deciding whether section 525(a) should be applied to invalidate another statute which specifically excludes an entity in bankruptcy from participating in a federal program.

There are several cases in which courts have held that agencies have violated section 525 when grants or contracts were revoked on the basis of the debtor's inability to demonstrate financial responsibility as required by the regulations. *See, e.g., In re Exquisito Services, Inc.,* 823 F.2d 151 (5th Cir.1987); *In re Bible Speaks,* 69 B.R. 368 (Bankr. D.Mass.1987); *In re Applegate,* 64 B.R. 448 (Bankr.E.D.Va.1986) and *In re Coleman American Moving Services, Inc.,* 8 B.R. 379 (Bankr.D.Kan.1980).[17] However, these finan-

**14.** The Purchaser readily concedes that the Debtor's eligibility to participate in HEA programs is not property of the estate pursuant to section 541(b)(1) and thus, cannot be transferred as part of the sale.

**15.** The Senate Report stated, in part, that:
> [r]estoring public confidence in student financial aid programs is one of the most serious challenges . . . the time to screen out low quality schools from federal student aid programs is before they get in the door. S.Rep. No. 102–204, 102d Cong., 1st Sess. at 3, 44 (1991).

**16.** The House Report stated the reason for the amendment as follows:

> [i]n amending this section of the [HEA], the Committee intends to improve the integrity of the Federal student assistance programs. . . . The Committee intends that institutions who file for bankruptcy will automatically be ineligible to participate in Title IV.
> H.Rep. 102–447, 102d Cong., 2d Sess. at 73–74 (1992).

**17.** Decisions pertaining to section 525(a) also include state agencies denying a grant or license based on the lack of financial responsibility of the debtor. *See e.g., In re National Cattle Congress, Inc.,* 179 B.R. 588 (N.D.Iowa 1995) (revocation of dog-racing license); *In re Rusnak,* 184 B.R. 459 (Bankr.E.D.Pa.1995) (preclusion from

cial responsibility regulations were general in nature, to be applied in a non-discriminatory fashion against all parties, including debtors. None of the regulations contained specific Congressional directives requiring discrimination against debtors.[18]

■ There are several maxims of statutory interpretation applicable when two statutes conflict. One of the canons of statutory interpretation is that "courts are bound by Congressional judgments that general bankruptcy policy give way to more specific policy considerations." *Johnson v. Edinboro State College,* 728 F.2d 163, 164 (3d Cir.1984) (citations omitted). Congress' desire to give the debtor a "fresh start" is but one of the several policies which may often come into conflict with another. *Id.* As previously discussed, section 525 was enacted to further this "fresh start" policy. However, the "fresh start" for schools relying on federal or state funding has already been proscribed by the recent amendments to sections 362(b) and 541(b) of the Bankruptcy Code. In fact, the Senate Report on "Abuses in Federal Student Aid Programs" specifically cites to instances when institutions take refuge in bankruptcy to prevent the accrediting agencies, *i.e.,* the Department, from taking action to conserve the scarce funds even when the debtor school may not be able to make loan refund payments to former students and may continue to admit new students despite the fact that the school may close or otherwise cut back its educational program. S.Rep. 102–58, 102nd Cong., 1st Sess. Thus, there is ample evidence that Congress intended to curtail the "fresh start" of a debtor school which relies on federal funding.

■ It is also axiomatic that in construing conflicting statutes, the statutes must be read to harmonize and preserve the goals of the two whenever possible. *Watt v. Alaska,* 451 U.S. 259, 267, 101 S.Ct. 1673, 1678, 68 L.Ed.2d 80 (1981); *Cf., Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1018, 104 S.Ct. 2862, 2880–81, 81 L.Ed.2d 815 (1984). In this instant case, the general policy goals of the two statutes—the Bankruptcy Code and section 1088(a)(4) of the HEA—will be furthered if this Court finds for the Department. First, Congress' desire to conserve scarce resources under HEA programs will be furthered. Second, conflicting provisions in the Bankruptcy Code will be reconciled. If Congress had amended the Bankruptcy Code to allow the accrediting agencies to take appropriate action free of the protection of the "automatic stay" and "property of the estate", to hold that the Department violated section 525 would only inhibit the agencies from taking the very action Congress had, in its wisdom, permitted.

■ Moreover, section 525 was enacted prior to the amendment of section 1088 of HEA, and the "more recent expression of legislative intent prevails." *See, e.g., In re Bible Speaks,* 69 B.R. 368 (Bankr.D.Mass. 1987). The fact that Congress amended section 525 recently and failed to specifically exclude the Department's actions pursuant to section 1088 of the HEA is not indicative of Congress' intent to bind the accrediting agencies of educational funding.

---

participating in Medicare programs); *In re General Development Corp.,* 163 B.R. 216 (condition of replatting of land on payment of prepetition taxes); *In re Jacobs,* 149 B.R. 983 (Bankr. N.D.Okla.1993) (revocation of insurance agent license); *In re Blue Diamond Coal Co.,* 145 B.R. 895 (Bankr.E.D.Tenn.1992) (revocation of certificate of self-insurance by Workers' Compensation Board); *In re Curry,* 148 B.R. 966 (S.D.Fla.1992) (eviction of tenant and revocation of rent subsidy); *In re Will Rogers Jockey & Polo Club, Inc.,* 111 B.R. 948 (Bankr.N.D.Okla.1990) (revocation of racing license); *In re Christmas,* 102 B.R. 447 (Bankr.D.Md.1989) (suspension of horse trainer's license); and *In re Feature Homes, Inc.,* 116 B.R. 731 (Bankr.E.D.Ca.1990) (certificate of corporate privileges).

18.. There is a recent case involving a state statute which expressly required discrimination against debtors. *In re Morrow,* 189 B.R. 793 (Bankr. C.D.Ca.1995). In *Morrow,* the Commissioner of California Department of Savings and Loan attempted to prohibit a chapter 7 debtor from serving on a board of directors of a savings and loan institution pursuant to a state statute which prohibited the debtor from being a director "upon being adjudicated as a bankrupt." The state court denied the Debtor's request to quash or stay the Commissioner's Cease and Desist Order. *Id.* at 796. Subsequently, the debtor commenced an action in bankruptcy court. However, the court did not reach this issue and declined to exercise jurisdiction under *Rooker–Feldman* doctrine. *Id.* at 808–811.

Thus, for all the above stated reasons, this Court finds that the Department is not in violation of section 525(a) of the Bankruptcy Code. The Debtor's motion is hereby denied. To the extent that the Purchaser's claim of discrimination is derivative of the Department's actions against the Debtor and section 525(a), this Court hereby denies the Purchaser's motion.

 Finally, this Court will address the Purchaser's argument that the Department is acting in contravention of the Sale Order. Preliminarily, this Court notes that the Sale Order merely provides that the Purchaser was acting in good faith and is, thus, entitled to the protection afforded in section 363(m) of the Bankruptcy Code. Section 363(m) provides that the reversal or modification on appeal of an order issued pursuant to section 363 would not affect validity of the sale unless the sale was stayed pending the appeal.[19] The Sale Order provides for nothing more. This Court did not decide whether the Purchaser was eligible to participate in HEA programs. The fact that the Department denied its eligibility does not violate the Sale Order. The sale is still valid. Moreover, the eligibility of the Debtor was not property of the estate, pursuant to 11 U.S.C. § 541(b)(1), which could have been transferred in the sale. It was this Court and the parties' understanding that the Purchaser would have to apply for eligibility on its own. That the Department denied the Purchaser application was a business risk that it undertook when it purchased the Debtor's assets. Since the Department's actions were not in contravention of this Court's Sale Order, and this Court has only exercised limited jurisdiction, the Purchaser should be making its substantive arguments against the Department's interpretation of the HEA statutes and regulations in another forum.

Accordingly, the Department's and the Debtor's motion for summary judgment is granted and denied, respectively. To the

limited extent that this Court has exercised its jurisdiction, this Court also hereby denies the Purchaser's motion for an order "preventing" the Department from barring it from participating in HEA programs.

THE DEPARTMENT IS TO SETTLE AN ORDER CONSISTENT WITH THIS DECISION ON FIVE (5) DAYS NOTICE.

---

19. Section 363(m) provides, in relevant part, that:

The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).