In re **QUALITY LASER WORKS, Debtor.**

**Frank BAKONYI, and Quality
Laser Works, Appellants,**

v.

**BOARDROOM INFORMATION SYSTEMS; Suzanne L. Decker, Trustee; United States Trustee; Ferenc Ledniczky; and Wells Fargo Bank, Appellees.**

**BAP No. NC–96–2086–ROME.**

**Bankruptcy No. 96–53274–JRG.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted July 21, 1997.

Decided Aug. 12, 1997.

David A. Boone, San Jose, CA, for Appellants.

Robert A. Franklin, Murray and Murray, Palo Alto, CA, for Boardroom Information Systems, Inc.

Before: RUSSELL, OLLASON, and MEYERS, Bankruptcy Judges.

## OPINION

RUSSELL, Bankruptcy Judge.

Following a trial, the bankruptcy court entered an order for relief under chapter 7[1] against the alleged debtor, a California general partnership, pursuant to § 303(h)(2). One of the two general partners of the involuntary debtor appeals. We AFFIRM.

## I.  FACTS

Appellant Quality Laser Works ("Quality") is a California general partnership. The general partners of Quality are appellant Frank Bakonyi and appellee Boardroom Information Systems, Inc. ("Boardroom"). Appellee Ferenc Ledniczky is the president and sole shareholder of Boardroom. (Quality's original partners were F & L Ventures and Boardroom. F & L Ventures filed a chapter 11 case in the Northern District of California, which was later converted to a chapter 7 case.[2] Following the filing of F & L Ventures' bankruptcy case, Bakonyi succeeded F & L Ventures as a general partner of Quality.)

Quality's business consisted of precision machining of materials by laser for the semiconductor industry, and included industrial polishing of various materials. As part of its business, Quality owned and operated lasers, which were run by a computer program which Quality had developed, polishers, and other related equipment. Quality's principal place of business was located at 775 Palomar Avenue, Sunnyvale, California, and it shared its office space at that address with Boardroom's general offices.

Some time during the first quarter of 1996, Bakonyi formed the opinion that Ledniczky had "betrayed" him by allegedly acting in a financially irresponsible manner, hiring and training people to replace him and, generally, violating the partnership agreement to such a degree that Bakonyi could no longer continue to act as a partner of Ledniczky and/or Boardroom. On April 1, 1996, Bakonyi arranged for the publication of a notice of dissolution of partnership, under the apparent belief that he was an "innocent partner" under California Corporations Code § 15037 and therefore entitled to act as the "liquidating partner" of Quality.

On April 2, 1996, while Ledniczky was in Florida, Bakonyi caused security guards to secure Quality's business premises and removed substantially all of Quality's equipment and inventory, together with equipment belonging to Boardroom. Bakonyi caused the equipment and inventory to be transferred to his new business enterprise, Laser Processing International, Inc., located at a different address. Bakonyi also posted a notice at Quality's business premises which notified Quality's employees that their services were terminated and that they were required to vacate the premises immediately.

Quality's bookkeeper, Victoria Gaffney,[3] telephoned Ledniczky in Florida on April 2 and advised him of Bakonyi's actions. Ledniczky immediately returned to California but was denied access to Quality's premises. He was also denied access to Boardroom's offices. At approximately the same time, Ledniczky and Gaffney learned that a check payable to Quality by one of its customers in the amount of $117,455.94, which Quality had received on March 27, 1996, had been deposited by Bakonyi into an account at the Bank of Santa Clara to which Bakonyi was the only signatory. Quality had never maintained any accounts at the Bank of Santa Clara.

On April 3, 1996, Boardroom filed a complaint in the state court against Bakonyi for a

---

1. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 and the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

2. Wells Fargo Bank and Suzanne Decker, the chapter 7 trustee of F & L Ventures, were creditors of F & L Ventures, and claimed in the proceedings below to be creditors of Quality as well. Wells Fargo Bank and Decker are named as appellees but have not submitted appellate briefs.

3. According to Ms. Gaffney's testimony at the trial on the involuntary petition, she is Boardroom's vice-president, and had also been Quality's bookkeeper for several years on a subcontractor basis.

temporary restraining order, preliminary and permanent injunctions, and damages. The complaint alleged that Bakonyi was improperly diverting Quality's property and funds into his new business and that he had breached the partnership agreement and his fiduciary obligation to Boardroom by the following types of actions: taking exclusive possession of Quality's business premises and its accounts, books, records and assets and excluding Boardroom from any participation in Quality's business; spending significant time and effort establishing his new business; contacting Quality's employees and informing them of his willingness to employ them in his new business; withdrawing excessive funds from Quality's accounts; and refusing, despite Boardroom's demand, to provide an accounting of Quality's business affairs. Boardroom requested a temporary restraining order which would prevent Bakonyi from taking possession of Quality's premises and allow Boardroom equal access to the premises and Quality's property.

In response, Bakonyi filed a cross-complaint for damages and injunctions which requested that the state court appoint him liquidating partner of Quality on the ground that:

> Unless [Bakonyi] is appointed the liquidating partner to take possession of, care for, manage, and operate the partnership assets and property, such property and assets are in danger of being lost, removed, or materially destroyed in that customers will go elsewhere for laser work if such work is not well and timely performed. Cross complainant Bakonyi is the only one who can deliver the work properly performed on a timely basis.

On April 15, 1996, the superior court denied Boardroom's temporary restraining orders,[4] and entered a temporary restraining order and order to show cause regarding preliminary injunctions in favor of Bakonyi. The temporary restraining order specifically authorized Bakonyi to act as Quality's liquidating partner, stating:

> 3. Bakonyi's Authority. Defendant and cross complainant Frank Bakonyi shall act as LIQUIDATING PARTNER for the partnership formerly known as QUALITY LASER WORKS. As such, Mr. Bakonyi is to perform all duties incident to the winding-up of the partnership, including, but not limited to, collection of amounts due, disposition of the partnership assets, and preparing an accounting of the final dissolution of the partnership. Cross defendants Boardroom Information Systems, Inc., and Ferenc Ledniczky, the agents, servants, employees, attorneys of any of them, and all those acting in concert with any of them, who receive notice of the injunction by service or otherwise, are hereby ordered not to and restrained from collecting any of the debts of the partnership known as QUALITY LASER WORKS, from assigning, transferring, or disposing of such partnerships [sic] assets, and from operating or interfering with the operation of Quality Laser Works, from claiming its assets, or collecting its receivables.

The court scheduled a preliminary injunction hearing for April 30, 1996.

Bakonyi filed a declaration on April 26, 1996 in support of the preliminary injunction, in which he stated that the partnership had a negative balance of $369,332.00 as of April 1, 1996, based on a comparison of approved purchase orders to receivables. During the course of the hearing on April 30, 1996, in connection with the issue of the amount of bond to be posted concerning the preliminary injunction, Bakonyi's counsel advised the state court that Quality had a negative net worth and that it would be a "minor miracle" if anything were left over after all of Quality's creditors were paid. At the conclusion of the hearing, the state court granted Bakonyi's request for a preliminary injunction pending further proceedings in the state

---

4. According to Boardroom, the superior court denied the temporary restraining orders on the ground that Boardroom lacked standing to file the lawsuit because it had not qualified to do business in California.

court action. Boardroom filed an involuntary chapter 7 petition against Quality the next day, May 1, 1996, thereby postponing indefinitely the continued prosecution of the pending state court action.

The bankruptcy court conducted a trial on the involuntary petition on October 28, 1996.[5] In connection with the trial proceedings, Bakonyi, Bakonyi's attorney, Ledniczky and Gaffney filed declarations in lieu of direct testimony, and Bakonyi and Boardroom submitted documents for introduction into evidence and filed evidentiary objections. At the commencement of the trial, the bankruptcy court issued its rulings on the parties' numerous evidentiary objections and reminded the parties that the scope of the trial was limited solely to the two narrow issues under § 303(h) of whether a custodian had been appointed and whether Quality was paying its debts as they became due.

The bankruptcy court then proceeded to hear testimony by Bakonyi, Ledniczky and Gaffney, as well as opening and closing arguments by counsel for Bakonyi and Boardroom. Counsel for Wells Fargo Bank appeared with respect to the issue of whether creditors of Quality existed, and advised the bankruptcy court that Quality's creditors included Wells Fargo Bank and Suzanne Decker, the chapter 7 trustee of F & L Ventures.[6]

At the conclusion of the trial, the bankruptcy court took the matter under advisement. On November 13, 1996, the bankruptcy court issued its oral ruling which found the order for relief proper under § 303(h)(2) on the ground that Bakonyi was a custodian in possession of the debtor's assets within 120 days of the filing of the involuntary petition. The court further ruled that as a result of its finding under § 303(h)(2), it did not need to address the alternative ground for relief under 5 303(h)(1) regarding wheth-

er Quality was generally paying its debts as they became due. The bankruptcy court ordered the entry of an order for relief against Quality. The order for relief was entered on November 22, 1996. Bakonyi and Quality appeal.

## II. ISSUE

Whether the bankruptcy court erred in finding Bakonyi a "custodian" within the meaning of § 303(h)(2) and entering an order for relief under chapter 7 against the involuntary debtor.

## III. STANDARD OF REVIEW

A bankruptcy court's findings of fact are reviewed for clear error and its conclusions of law are reviewed *de novo*. *In re Fraga*, 210 B.R. 812 (9th Cir. BAP1997). Mixed questions of law and fact are reviewed *de novo*. *In re Markair, Inc.*, 172 B.R. 638, 641 (9th Cir.BAP1994) (case presents a mixed question of fact and law where historical facts are established, rule of law is undisputed, and issue is whether facts satisfy legal rule).

## IV. DISCUSSION

*Whether The Bankruptcy Court Erred In Finding Bakonyi A "Custodian" Within The Meaning Of § 303(h)(2) And Entering An Order For Relief Under Chapter 7 Against The Involuntary Debtor*

Involuntary bankruptcy cases are governed by § 303, which provides, in pertinent part, as follows:

**§ 303. Involuntary cases**

. . . .

(b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—

---

**5.** At the time of trial, the following additional matters were also pending before the bankruptcy court: Bakonyi's answer to the involuntary petition; Boardroom's and Ledniczky's motion for a protective order and for leave to amend the involuntary petition; Bakonyi's motion to dismiss the involuntary petition and his request for sanc-

tions and attorneys' fees; and Boardroom's and Ledniczky's motion for an order appointing an interim trustee.

**6.** See *supra* note 2.

. . . .

(3) if such person is a partnership-

(A) by fewer than all of the general partners in such partnership; or

(B) if relief has been ordered under this title with respect to all of the general partners in such partnership, by a general partner in such partnership, the trustee of such a general partner, or a holder of a claim against such partnership; or

. . . .

(h) [A]fter trial, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed, only if-

(1) the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute; or

(2) within 120 days before the date of the filing of the petition, a custodian, other than a trustee, receiver, or agent appointed or authorized to take charge of less than substantially all of the property of the debtor for the purpose of enforcing a lien against such property, was appointed or took possession.

. . . .

(Emphasis added.)

■ The grounds for relief under § 303(h) are alternative, as indicated by the word "or" inserted between subsections (h)(1) and (h)(2). The bankruptcy court based its decision on its finding that Bakonyi was a "custodian" within the meaning of § 303(h)(2) and found that it therefore did not need to address the alternative "debt" issue of § 303(h)(1). Accordingly, the sole issue on appeal is whether the bankruptcy court correctly characterized Bakonyi as a "custodian" within the meaning of subsection (h)(2).

Bakonyi nevertheless extensively argues on appeal the issues of whether the bank-

ruptcy court lacked jurisdiction over the involuntary proceeding and whether Quality was generally paying its debts as they became due within the meaning of § 303(h)(1). These issues will be addressed first despite their irrelevance due to the extent to which they dominate Bakonyi's arguments.

1. *The jurisdiction of the bankruptcy court over the involuntary proceeding*[7]

a. *Subject matter jurisdiction in general*

■ It is well settled that the filing of an involuntary petition invokes the subject matter jurisdiction of the bankruptcy court if the petition is sufficient on its face and contains the essential allegations. *In re Kidwell,* 158 B.R. 203, 208 (Bankr.E.D.Cal.1993) (citing *Canute S.S. Co. v. Pittsburgh & West Virginia Coal Co.,* 263 U.S. 244, 248, 44 S.Ct. 67, 68, 68 L.Ed. 287 (1923)). Further, a petition on Official Form 5 is regular on its face if the boxes next to the preprinted essential allegations are checked and if the form is otherwise correctly completed. *Kidwell,* 158 B.R. at 209.

■ The involuntary petition in this case met the requirements of § 303(b)(3)(A), as it was filed by fewer than all of the general partners of a partnership. The form of involuntary petition used by Boardroom, which appears from the record to be Official Form 5, appears to have been correctly completed and all of the boxes next to the preprinted essential allegations were checked. Bakonyi does not argue that the involuntary petition was defective in any manner. The subject matter jurisdiction of the bankruptcy court over the involuntary proceeding was properly invoked by the filing of a facially sufficient involuntary petition by an eligible petitioner.

b. *The "Rooker–Feldman Doctrine"*

Bakonyi argues that the bankruptcy court was precluded from exercising subject matter jurisdiction over the involuntary proceed-

---

7. Many of Bakonyi's arguments regarding jurisdiction would have been relevant to abstention under § 305; however, this issue was not raised in the proceedings below.

ing by virtue of the *"Rooker–Feldman"* doctrine.[8]

The *"Rooker–Feldman"* doctrine bars a lower federal court from conducting a review of a state court judgment for errors in construing federal law or constitutional claims "inextricably linked" with the state court judgment. *See In re Morrow,* 189 B.R. 793, 809 (Bankr.C.D.Cal.1995). The doctrine has the same effect as the preclusion doctrines of *res judicata* and collateral estoppel, and is concerned with the finality of state court judgments. *Id.* at 809 (citing *Guarino v. Larsen,* 11 F.3d 1151, 1157 (3d Cir.1993)). By definition, a final judgment must have been reached in a state court action in order for the doctrine to apply. *Morrow,* 189 B.R. at 809.

Bakonyi cites *Worldwide Church of God v. McNair,* 805 F.2d 888 (9th Cir.1986), however, for the proposition that the doctrine applies in the Ninth Circuit to non-final judgments. He appears to interpret *Worldwide Church* as stating that a final judgment on appeal to a state appellate court is the equivalent of a "non-final judgment" and, therefore, a final adjudication need not occur for the *"Rooker–Feldman"* doctrine to apply.

In *Worldwide Church,* the plaintiffs appealed a state court jury verdict against them to the California Court of Appeal. While the state court appeal was pending, plaintiffs filed an action in the federal district court under 42 U.S.C. § 1983. The Ninth Circuit, citing *Feldman,* held that the district court lacked subject matter jurisdiction over the § 1983 action on the ground that the district court had no authority to review a final determination of a state court in judicial proceedings. *Worldwide Church,* 805 F.2d at 890. Bakonyi's argument misstates the Ninth Circuit's discussion in *Worldwide Church* on the issue of finality of judgments.

In this case, the state court action for damages never resulted in a final judg-

ment, on the merits or otherwise. The filing of the involuntary bankruptcy petition on May 1, 1996, interrupted the state court action immediately following the state court's issuance of the preliminary injunction on April 30, 1996. The granting (or denial) of a preliminary injunction does not constitute a final adjudication of the ultimate rights in a controversy. *Cohen v. Board of Sup'rs of City and County of San Francisco,* 40 Cal.3d 277, 219 Cal.Rptr. 467, 471, 707 P.2d 840, 844 (1985). The *"Rooker–Feldman"* doctrine is inapplicable to the facts of this case.

2. *Bakonyi's argument regarding "debts" under 303(h)(1) is incorrect as well as irrelevant*

Bakonyi's argument concerning § 303(h)(1) is premised on the assumption that only past due obligations constitute debts. He asserts that Quality had no past due obligations (except for one disputed invoice in the amount of $701.91 which had eventually been paid) and accordingly no debts and no creditors; consequently, by definition, Quality was generally paying its debts as they became due within the meaning of § 303(h)(1). His argument reflects a basic misunderstanding of the meaning of "debt" within the context of bankruptcy law.

A "debt" is defined in the Code as a "liability on a claim." § 101(11). For purposes of determining whether an involuntary petition is proper, the term "debt" has been further defined as a "liability for repayment" and, therefore, an obligation which, *when it becomes due,* will have to be paid from the debtor's assets. *In re Central Hobron Associates,* 41 B.R. 444, 447 (D.Haw. 1984) (emphasis added). Contrary to Bakonyi's contention, an obligation need not be overdue to constitute a "debt" within the meaning of the Code.

Bakonyi acknowledges on appeal that Quality was responsible for unpaid taxes, payroll and other specified bills. He admits

---

8. The doctrine is named after the following two cases which gave rise to the rule: *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 476, 103 S.Ct. 1303, 1311–12, 75 L.Ed.2d 206 (1983).

that Quality had "provided for" taxes in the amount of $31,909.00 which were not yet due, that it had $842,246.00 in liquid assets to pay $106,274.00 in bills, and that $8,800 was immediately due for payroll. Quality clearly owed debts. The fact that many of its debts were not yet overdue did not negate the existence of the debts or of the creditors to whom the debts were owed.

In any event, as discussed above, § 303(h)(1) is irrelevant to this appeal because the bankruptcy court based its decision on the alternative ground for relief provided by subsection (h)(2).[9]

3. *The bankruptcy court correctly characterized Bakonyi as a "custodian" within the meaning of § 303(h)(2)*

The definition of "custodian" is set forth in § 101(11),[10] which states:

(11) "custodian" means–

(A) receiver or trustee of any of the property of the debtor, appointed in a case or proceeding not under this title;

(B) assignee under a general assignment for the benefit of the debtor's creditors; or

(C) trustee, receiver, or agent under applicable law, or under a contract, that is appointed or authorized to take charge of property of the debtor for the purpose of enforcing a lien against such property, or for the purpose of general administration of such property for the benefit of the debtor's creditors;

■■■ The legislative history of the definition indicates that Congress intended the term "custodian" to encompass a variety of prepetition agents who have taken charge of a debtor's assets. *Matter of Cash Currency*

*Exchange, Inc.*, 762 F.2d 542, 553 (7th Cir. 1985), *cert. denied Fryzel v. Cash Currency Exchange, Inc.*, 474 U.S. 904, 106 S.Ct. 233, 88 L.Ed.2d 232 (1985); *In re Redman Oil Co., Inc.*, 95 B.R. 516, 520 (Bankr.S.D.Ohio 1988). Senate Report No. 989 illustrates that the categories of custodians are descriptive rather than exhaustive:

Paragraph [11] defines "custodian". There is no similar definition in current law. It is defined to facilitate drafting, and means a prepetition liquidator of the debtor's property, such as an assignee for the benefit of creditors, a receiver of the debtor's property, or a liquidator or administrator of the debtor's property. The definition of custodian to include a receiver or trustee is descriptive, and not meant to be limited to court officers with those titles. The definition is intended to include other officers of the court if their functions are substantially similar to those of a receiver or trustee. *Redman Oil*, 95 B.R. at 520 (quoting H.R.No. 95–595, 95th Cong. 1st Sess. 310 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6267); see also *Cash Currency*, 762 F.2d at 553.

Bakonyi's arguments on appeal, which frequently misstate the evidence admitted at trial,[11] can be summarized as follows:

a. The bankruptcy court erroneously concluded that § 101(11) should not be construed restrictively. There is no support in the relevant case law for the finding that the statutory definition of "custodian" set forth in § 101(11) can apply to an owner of a business or a liquidating partner of a partnership.

b. A "custodian" must be a third party appointed to take charge of a debtor's assets and administer them for the general benefit

---

9. An evidentiary issue raised by Bakonyi, concerning the admissibility of statements made by his counsel at the preliminary injunction hearing regarding Quality's financial status, is similarly irrelevant given the basis for the bankruptcy court's ruling.

Nevertheless, it should be noted that while such statements were not evidence at the prelim-

inary injunction hearing, the statements would in fact be admissible as admissions pursuant to Fed.R.Evid. 801(d)(2) in a later, separate hearing, such as the trial on the involuntary petition.

10. Formerly § 101(10).

11. *See, e.g., infra* p. 944 and note 12 at p. 944.

of all of the debtor's creditors. As the liquidating partner who was attempting to resolve the pending state court action and wind up the partnership, Bakonyi was acting in his own interests and not for the benefit of creditors.

c. A finding of "custodian" requires a change in the management of a debtor's assets, and Bakonyi cannot be characterized as such because no such change occurred.

d. "Custodian" is a subset of "generally not paying debts as they become due" by virtue of the legislative history of § 303(b)(3)(A). The evidence admitted at trial proved conclusively that Quality had no debts and no creditors, and the bankruptcy court reached an erroneous conclusion on this issue which was contrary to the evidence.

e. A liquidating partner cannot be a "custodian" because a "custodian" must be appointed by a court. Liquidating partner status is conferred by statute (specifically, by California Corporations Code § 15037, which Bakonyi contends is self-executing) rather than by court appointment. The state court injunction orders do not purport to "appoint" anyone as a "custodian."

f. Finally, a "custodian" must take possession of substantially all of a debtor's assets. Bakonyi never did so, and Ledniczky conceded in his trial testimony that Bakonyi does not have substantially all of the debtor's assets.

■ The characterization by the bankruptcy court of Bakonyi as a "custodian" presents a mixed question of fact and law, which we review *de novo*. *See In re Markair*, 172 B.R. 638, 641 (9th Cir. BAP 1994). During the course of the trial on the involuntary petition, the bankruptcy court had ample opportunity to consider the parties'

arguments, including those of Bakonyi summarized above, to assess the credibility of the parties and witnesses, and to consider the parties' various documents which were admitted into evidence. The bankruptcy court's ruling on the involuntary petition contained a detailed discussion of the relevant statutory and case authorities, the testimony offered with respect to each argument, and its reasoning in support of its decision.[12]

The following excerpts from that transcript illustrate the care and detail with which the bankruptcy court supported the reasons for its decision with specific trial testimony. For example, the bankruptcy court addressed Bakonyi's "third party" and "no change in management" arguments as follows:

> [U]pon becoming the sole liquidating partner, [Bakonyi] effectively took on a new role which changed the structure and control of the partnership, which is similar in some respects to what occurs in a third party custodian situation. Bakonyi testified at trial that following his appointment as the liquidating partner, he could unilaterally terminate employees, whereas prior to the dissolution, the decision would be made jointly by the partners. He also testified that as the liquidating partner, he is in possession of all the debtor's accounts receivable, work in process, bank accounts, and much of the debtor's equipment. It is clear that Bakonyi's role as the liquidating partner created responsibilities that are similar to those of any pre-petition liquidator. The Court thus finds that the fact that he is a partner and not a third party is not a determinative factor.

With respect to Bakonyi's "no debts/no creditors" argument, the bankruptcy court stated:

> Bakonyi's counsel also argued at trial that there are no creditors for Bakonyi to act as a custodian for. However, Bakonyi

---

12. The bankruptcy court's description of the witnesses' testimony illustrates the numerous misstatements of "fact" which Bakonyi contends on appeal were "proved conclusively" at trial. By way of example only, Bakonyi asserts that "it was conceded and proved at trial that there were

no unpaid creditors." He further states that "[Ledniczky's] testimony concedes that Bakonyi does not have substantially all the assets of the debtor." Such statements of "fact" are refuted by the transcript of the court's ruling.

testified that as liquidating partner, he has paid all known creditors.... [T]he evidence before the Court is that the partnership, in fact, did have creditors at the time Bakonyi became the liquidating partner for the partnership ...

The bankruptcy court dispensed with Bakonyi's "no possession of substantially all assets" argument as follows:

   ... [Boardroom] contends that Bakonyi did take possession of the partnership as the sole liquidating partner. The Court agrees with [Boardroom] that Bakonyi took possession of the assets of the partnership. Bakonyi testified at the hearing that he is in possession of all of [debtor's] accounts receivable, work in process, and bank accounts. only a few items of equipment or inventory were left behind at the business premises. No evidence was presented to contradict Bakonyi's testimony that he is in possession of substantially all of the partnership. Thus, the Court finds that Bakonyi has taken possession of the partnership assets for purposes of § 303(h)(2).

The bankruptcy court's ruling addressed Bakonyi's remaining appellate arguments in similar detail. The bankruptcy court's view of the evidence in support of its factual findings regarding Bakonyi's activities was plausible and correct, and was amply supported by the testimonial and documentary evidence admitted at trial. The bankruptcy court properly applied the relevant legal authorities to the evidence before it, and the clearly established facts of the case satisfied the bankruptcy court's conclusion that Bakonyi was a "custodian" within the meaning of § 303(h)(2).

## V. CONCLUSION

The bankruptcy court conducted a trial to determine the propriety of entering an order for relief against the alleged debtor. The bankruptcy court held that appellant Frank Bakonyi, one of the two general partners of the alleged debtor, was a "custodian" within the meaning of § 303(h)(2), on the ground that he had taken possession of substantially all of the involuntary debtor's assets within 120 days of the filing of the involuntary petition. The bankruptcy court further found that there was no need to address the alternative ground for relief under § 303(h)(1) in light of its ruling on the basis of § 303(h)(2).

The factual findings of the bankruptcy court regarding appellant Bakonyi's activities with respect to the debtor's assets were amply supported by the testimonial and documentary evidence admitted at the trial on the involuntary petition. The facts of the case satisfied the bankruptcy court's legal conclusion that Bakonyi was a "custodian" within the meaning of § 303(h)(2). The entry of an order for relief against the involuntary debtor was proper. We AFFIRM.